In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00358-CV
_____

IN RE COMMITMENT OF RICHARD WILLIS BUTLER

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 12-11-12505-CV

MEMORANDUM OPINION

A jury found appellant Richard Willis Butler ("Butler") to be a sexually violent predator, and the trial court rendered a final judgment with an order of civil commitment. *See* Tex. Health & Safety Code Ann. §§ 841.001-841.151 (West 2010 & Supp. 2013) ("SVP" statute). As defined by the Legislature, a sexually violent predator is a person who "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id*. § 841.003(a) (West Supp. 2013). A person is

a "repeat sexually violent offender" for purposes of the SVP statute if the person is convicted of more than one sexually violent offense, and a sentence is imposed for at least one of the offenses. *Id.* § 841.003(b) (West Supp. 2013). A "sexually violent offense" includes, among other offenses, indecency with a child. *See id.* § 841.002(8)(A) (West Supp. 2013); Tex. Penal Code Ann. § 21.11 (West 2011). A behavioral abnormality is a "congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." Tex. Health & Safety Code Ann. § 841.002(2) (West Supp. 2013).

On appeal, Butler raises three issues. First, he contends the trial court committed reversible error in refusing to allow him leave of court to file a third-party petition against the Office of Violent Sex Offender Management (OVSOM). Second, he argues that the trial court committed reversible error by failing to allow his attorney to perform a complete cross-examination of Dr. Gaines about her "rate of error." In his third issue, he argues that the SVP statute is facially unconstitutional. We conclude that Butler's issues are without merit, and we affirm the trial court's judgment.

2

UNDERLYING FACTS

Butler was previously convicted of three separate offenses of indecency with three different children. The first offense for which he was convicted occurred in 1982 when he was seventeen and the victim was seven. Butler testified at trial that he saw the seven-year-old girl around his apartment complex and at the pool. He went up to her apartment while no one else was home, and fondled her, touched her genitals with his hand, and performed oral sex on her. He received a three year sentence for his first conviction, and he was released April 3, 1984, on mandatory supervision.

Butler committed the second sexual offense on April 25, 1984, just twenty-two days after his release from prison for the first offense. His second victim was an eleven-year-old girl. Butler met the girl when he was jogging at a middle school. He had been instructed to stay away from those areas as a condition of his parole. While he was on school property, he touched the child on the breasts and buttocks. Butler pleaded guilty to indecency with a child, and he was sentenced in 1984 to ten years confinement. He was released on mandatory supervision in December 1989.

Once released, Butler again began "hanging around" a recreational center and young children. While at the recreational center, he touched another eleven-

year-old girl. He was indicted and pleaded guilty to indecency with a child. The indictment alleged he touched the eleven-year-old girl's genitals and breasts with the intent to arouse and gratify his sexual desire. This was his third conviction for indecency with a child by contact. Butler was sentenced to twenty-five years in prison for the third offense and he was scheduled to be released on mandatory supervision for that offense in August of 2013. Butler admitted that while he was in prison he had 150 disciplinaries, and 23 of those write-ups were for sexual misconduct.

The State's expert, Dr. Sheri Gaines, M.D., a board-certified psychiatrist with training in forensic psychiatry, testified that she reviewed Butler's records (including the files relating to the criminal offenses) and the evaluation by the psychologist, Dr. Woodrick. Gaines also interviewed Butler and reviewed his deposition. She testified that Butler's "sexual deviancy is a diagnosis of pedophilia, which is sexual urges, acts, or behaviors toward prepubescent children." Gaines explained that Butler's pedophilia is a "chronic, lifelong condition." She also diagnosed Butler with "antisocial personality disorder."

In Gaines's professional opinion, Butler has a behavioral abnormality. In response to the State's questioning, she further indicated that Butler has a "behavioral abnormality today[,]" a conclusion which she reached by reviewing

4

records showing Butler's "behaviors over time" and "by looking at risk factors over time[.]" She noted that Dr. Woodrick diagnosed Butler as a psychopath. Gaines concurred with that diagnosis, because Butler has a history of violence, has difficulty controlling his anger, and has a "lifelong" problem conforming his behavior even when he is in a structured environment.

Dr. Gaines referenced two important factors that contribute to the risk that Butler will reoffend with crimes of sexual violence: his sexual deviancy and his antisocial personality disorder. Other risk factors identified by Gaines include the three prior convictions for sexually violent offenses, other allegations regarding Butler's following of children around in the neighborhood, allegations of sexually acting out as a child even before his first conviction, assaulting one or more of his victims in a public place, selection of unrelated and stranger victims, reoffending shortly after being released from prison on parole, and blaming his victims for his behavior.

Dr. Gaines also recognized that Butler has exhibited certain positive factors, such as completion of an anger management course, finding "religion" while he was in prison, and the continued support from his mother. However, Dr. Gaines noted that even after Butler completed the anger management course, he committed "staff assaults" on prison officials, has been in administrative

5

segregation in prison, and has committed sexual offenses in prison even after he "found religion" and after he received some counseling. According to Dr. Gaines, Butler admitted he has trouble controlling his sexual urges, and he continues to blame his victims.

REFUSAL TO ALLOW THIRD-PARTY CLAIM AGAINST OVSOM

In his first issue, Butler contends the trial court erred in refusing to allow him leave of court to file a "third-party petition" against OVSOM. OVSOM is a state agency that "perform[s] appropriate functions related to the sex offender civil commitment program provided under Chapter 841, Health and Safety Code, including functions related to the provision of treatment and supervision to civilly committed sex offenders." Tex. Gov't Code Ann. § 420A.010 (West 2012).

Butler's proposed third-party petition, which seeks a declaratory judgment and injunctive relief against OVSOM, alleges that OVSOM requires offenders committed under Chapter 841 to reside in "secure residential facilities," to adhere to standards that are vague, and to be subject to a commitment statute that is punitive. At the pretrial hearing on his motion for leave to file the third-party petition, Butler argued that he needed to sue OVSOM, because "[i]n order to contest the [c]onstitutionality of the statute we need to have the agency responsible for administering the statute. So that makes them an indispensable party. . . ."

6

Butler in effect argues that the SVP statute is punitive in nature and unconstitutional, as more fully reflected in his third issue. The trial court denied the motion and concluded that an independent suit against OVSOM would be premature.

On appeal, Butler argues that the trial court misapplied the law and erred in refusing to allow him to file his third-party petition. He contends that his position is supported by the "findings" which the Texas Supreme Court made in *In re Commitment of Fisher*, 164 S.W.3d 637, 656 (Tex. 2005). Specifically, Butler points to the statement in *Fisher* that "[h]ad Fisher so requested, it is possible that the trial court would have modified or removed some of the contract conditions of which he now complains." *Id*. In *Fisher*, the Court suggested the possibility of modification of the conditions even though OVSOM was not joined as a party. *See id*. The Court further noted that Fisher could not obtain any removal or modification of the conditions or a determination of vagueness of those conditions, because he did not present such a request to the trial court. *Id.* It is clear that the Supreme Court was specifically referencing Fisher's challenges to certain provisions of the trial court's post-trial commitment order and "Treatment and Supervision Contract" which was "appended" to the judgment that found Fisher to

7

be a sexually violent predator. *Id*. Therefore, Butler has misconstrued the language in *Fisher*.

At the stage of the proceeding in which Butler was attempting to assert his third-party claim, he had not yet been subjected to any commitment order, and the questions surrounding the OVSOM terms of commitment were not at issue. Moreover, this Court has previously examined and rejected the argument regarding the refusal of the trial court to require joinder of OVSOM. *See In re Commitment of Dodson*, No. 09-13-00222-CV, 2014 WL 2218718, at *5 (Tex. App.— Beaumont May 29, 2014, no pet.) (mem. op.) ("[I]t does not appear that OVSOM would be a proper party to a proceeding that addressed the claims in Dodson's counterclaim, as the SVP statute does not contain a provision waiving OVSOM's governmental immunity."); *see also* Tex. Health & Safety Code Ann. §§ 841.001-841.151. Likewise, the respective chapter of the Government Code pertaining to OVSOM does not contain a provision waiving sovereign immunity. *See* Tex. Gov't Code Ann. §§ 420A.001-420A.011 (West 2012).

Butler claims, based on alleged comments from the trial court at certain hearings in this case and a comment made in another commitment case, that he must add OVSOM as a party in order to challenge the constitutionality of Chapter 841. The constitutionality of various sections of Chapter 841 has been repeatedly

8

challenged, and no section to date has been declared unconstitutional. *See, e.g., In re Commitment of Fisher*, 164 S.W.3d 637; *Beasley v. Molett*, 95 S.W.3d 590 (Tex. App.—Beaumont 2002, pet. denied); *In re Commitment of Mullens*, 92 S.W.3d 881 (Tex. App.—Beaumont 2002, pet. denied). The courts have not held that OVSOM is an indispensable party in a constitutional challenge in this context. Accordingly, we conclude that the trial court did not abuse its discretion in refusing to grant Butler leave to file the third-party petition against OVSOM. The trial court could have reasonably concluded that OVSOM was not a proper party to this suit, and OVSOM's presence in the suit--the actual purpose of which was to establish whether or not Butler is a sexually violent predator--would not promote an orderly presentation of the commitment proceeding. Accordingly, we overrule issue one.

### LIMITATION OF CROSS-EXAMINATION

In his second issue, Butler argues that the trial court erred in denying him the right to engage in further cross-examination of Dr. Gaines relating to her "rate of error" in SVP cases. We review a trial court's decision concerning the admission or exclusion of evidence for an abuse of discretion. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). A trial court abuses its discretion if it acts without reference to guiding rules and principles, or if it acts arbitrarily and unreasonably. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558

(Tex. 1995); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). If we find the trial court erred, we will reverse a judgment only if the trial court's error probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case on appeal. *See* Tex. R. App. P. 44.1(a).

Under Rule 611(b) of the Texas Rules of Evidence, counsel may be allowed to cross-examine a witness on any matter relevant to any issue in the case, including credibility. Tex. R. Evid. 611(b); *In re Commitment of Ramirez*, No. 09-13-00176-CV, 2013 WL 5658597, at *4 (Tex. App.—Beaumont Oct. 17, 2013, no pet.) (mem. op.). The trial court, however, has discretion to impose limitations on the examination of witnesses. *See* Tex. R. Evid. 611(a) ("The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."); *see also In re Commitment of Campbell*, No. 09-11-00407-CV, 2012 WL 2451620, at **6-7 (Tex. App.—Beaumont June 28, 2012, pet. denied) (mem. op.).

Furthermore, under Rule 403 of the Texas Rules of Evidence, a trial court may exclude even relevant evidence if its probative value is substantially

10

outweighed by the danger of "unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403; *State v. Malone Serv. Co.*, 829 S.W.2d 763, 767 (Tex. 1992). In applying Rule 403 in *In re Commitment of Alexander*, No. 09-11-00650-CV, 2013 WL 5425557, at \*\*4-6 (Tex. App.—Beaumont Sept. 26, 2013, pet. denied) (mem. op.), we noted the potential for confusion of the jury in the event that cross-examination questions concerning the expert's rate of error in the SVP context were permitted. We concluded that the trial court did not abuse its discretion in restricting questions regarding the expert's rate of error, because the expert was not making a prediction as to whether the defendant would commit a future act of sexual violence; rather the expert was assessing a present risk that was based on the defendant's history, his actuarial tests, and his interview. *Id*. at \*5.

During cross-examination, Butler's trial counsel asked Dr. Gaines the following questions:

> [Defense Counsel]: Q. Dr. Gaines, are you aware of your rate of error in these cases?
> A. I don't understand the question.
> Q. Are you aware of your accuracy rate in these cases?
> A. Well, I still don't understand the question, because you can't evaluate someone's accuracy when they're just giving an opinion. I am not predicting the future. I am not saying: Oh, yes, Mr. Butler is absolutely 100 percent going to reoffend. So I don't think that's even a valid question.

11

Q. How many times have you stated that someone will commit an act of sexual violence and they actually have went on to commit another act of sexual violence?

[Prosecutor]: Objection, misleading.

THE COURT: Sustained.

Thereafter, Butler made the following offer of proof:

[Defense Counsel]: Q. Dr. Gaines, do you know what your rate of error is?

A. I think I already asked (sic) that question. And--I already answered that question. I think it's an invalid question because I'm not making a prediction. I'm not saying that something is going to happen. I'm saying that something is likely to happen.

Q. Is that a "no," that you don't know what your rate [of] error is?

A. It's not a "yes" or a "no." I'm saying that, in my opinion, it's an invalid question because I'm not making a prediction.

Q. Would it surprise you that none of the people you stated was likely to commit another act of sexual violence has never gone on to commit another act of sexual violence?

A. It would not surprise me at all because that is the exact reason the Legislature made this statute, to keep that from happening. So it would lead me to believe that the statute is effective.

    . . . .

[STATE]: If those questions are asked in front of the jury, I think we need the opportunity . . . I think the door has been opened. We can present evidence about the conditions of civil commitment and why no one has reoffended and that they're mandated to go to treatment and they live in a structured setting and that sort of thing. I think . . . the jury is entitled to have a full picture or we just don't go down this road at all.

THE COURT: . . . [I]t's just misleading, asking has anybody ever . . . offended, because we're all sitting here knowing why that hasn't happened. So if we're going to sit here and know why that hasn't been, that jury over there needs to know why it hasn't happened;

12

because, otherwise, you're making Dr. Gaines look like she's, you know, not doing a good job. And we don't know whether she did a good job or not because we never know if these people are going to reoffend.

Butler requested that the testimony he obtained in the offer of proof be provided to the jury, but the trial court denied the request. The trial court concluded that the objected-to question was "misleading," because the question failed to give the jury the complete picture as to why a person who has been civilly committed may not have reoffended.

The issue the jury was required to decide was whether Butler is a repeat sexually violent offender who presently suffers from a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence. *See* Tex. Health & Safety Code Ann. §§ 841.002(2), 841.003(a); § 841.062(a) (West 2010). For the reasons stated in *In re Commitment of Alexander* and the applicable factors stated in Rule 403 (danger of confusion of the issues or of misleading the jury), we conclude that the trial court did not abuse its discretion in excluding the additional "rate of error" cross-examination questions that Butler sought to elicit from Dr. Gaines. The limitation that the trial court placed upon the cross-examination was not arbitrary or unreasonable. We overrule issue two.

13

Butler argues in his final issue that "[s]ection 841 of the Texas Health & Safety Code is unconstitutional on its face[.]" However, Butler fails to specify which sections of Chapter 841 are unconstitutional and which constitutional rights have been violated. He disagrees with the Texas Supreme Court in *In re Commitment of Fisher* where the Court states that the Texas SVP statute "imposes no physical restraint and therefore 'does not resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint.'" *In re Commitment of Fisher*, 164 S.W.3d at 648 (quoting *Smith v. Doe*, 538 U.S. 84, 100 (2003)). Butler asserts that the Texas Supreme Court is "operating under a severe misconception regarding civil commitment in Texas." He argues that the Texas SVP statute is "punitive" and, therefore, the entire statute is facially unconstitutional. We have previously rejected this argument and held in *Beasely*, 95 S.W.3d at 607-08, that Chapter 841 is not punitive in nature. *See also In re Commitment of Fisher*, 164 S.W.3d at 645-56. Additionally, this Court recently examined and rejected a similar constitutional challenge to the SVP statute in *In re Commitment of Dodson*, 2014 WL 2218718, at **1-2 (noting that the Texas Supreme Court rejected the argument that the SVP statute is punitive in nature in *In re Commitment of Fisher*). We note that *Dodson* also stated:

In *Fisher*, the Texas Supreme Court concluded that the types of restrictions at issue were not necessarily evidence showing that the statute was punitive in nature. If the restrictions themselves are not necessarily punitive in nature, then their application to a person who is committed is also not necessarily evidence that the restrictions have been punitively applied. *Id.* at 648 (reasoning that the SVP statute's creating restraints, such as requiring persons to reside at particular locations, to be fitted for satellite monitoring, and to be restricted in a host of activities, did not "compel a conclusion that the statute is punitive"). We are bound to follow *Fisher* until the Texas Supreme Court instructs otherwise. *See Lubbock Cnty., Tex. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002) ("It is not the function of a court of appeals to abrogate or modify established precedent.").

*In re Commitment of Dodson*, 2014 WL 2218718, at *2. We overrule Butler's facial constitutional challenge. He has failed to demonstrate, as he must, that the statute always operates unconstitutionally. *Wilson v. Andrews*, 10 S.W.3d 663, 670 (Tex. 1999); *see also In re Commitment of Fisher*, 164 S.W.3d at 654-55. Having overruled each of Butler's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on July 7, 2014
Opinion Delivered September 4, 2014

Before Kreger, Horton, and Johnson, JJ.