In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00222-CV

_____

IN RE COMMITMENT OF DAVID DODSON

**On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 08-03-02882 CV**

**OPINION**

David Dodson appeals from a civil commitment order, rendered by the trial court following a trial[1] in 2013. At the trial's conclusion, the jury found Dodson to be a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2013) (SVP statute). In eight issues, Dodson challenges the constitutionality of the SVP statute, complains that State's counsel was allowed

_____

[1]In 2008, a jury in another of Dodson's civil commitment trials found Dodson to be a sexually violent predator; however, the judgment was reversed on appeal due to the trial court's ruling to exclude the testimony of Dodson's expert, Dr. Anna Shursen. *In re Commitment of Dodson*, 311 S.W.3d 194, 204 (Tex. App.—Beaumont 2010, pet. denied).

1

to provide the jury with too much detail in opening statement about the evidence the jury would hear during the trial, argues that the opinions presented to the jury from one of the State's experts were unreliable and conclusory, complains about various arguments the State's attorney made to the jury during her closing argument, and alleges the trial court erred by denying his motion to modify the conditions imposed on him by the trial court's civil commitment order. Because Dodson's issues are, in our opinion, without merit, we affirm the trial court's judgment.

## Constitutional Challenges

In issues one, two, and seven, Dodson raises constitutional challenges to the trial court's civil commitment order. In issue one, Dodson argues the SVP statute is unconstitutional because it is punitive in nature. In the same issue, he also alleges the statute is unconstitutional as it was applied to him. Dodson's initial argument, that the SVP statute is punitive in nature, was considered and rejected in 2005 by the Texas Supreme Court. *See In re Commitment of Fisher*, 164 S.W.3d 637, 645-53 (Tex. 2005). In *Fisher*, after comprehensively examining the SVP statute, the Texas Supreme Court concluded that the statute is civil and held that the SVP statute is not punitive. *See id.* We reject Dodson's argument that the SVP statute is punitive in nature.

2

Dodson also argues that the SVP statute, as applied to him, does not pass constitutional muster. Under an "as applied" challenge, the party that is challenging the application of the statute contends that the statute, although generally constitutional, operates unconstitutionally given the challenging party's particular circumstances. *Id.* at 656 n.17 (citing *Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 461 n.5 (Tex. 1997)). According to Dodson, the SVP statute has been punitively applied to him because he has suffered physical restraint, been denied community access, and been refused adequate care and treatment. At the conclusion of the trial, Dodson requested a directed verdict on his claim that his evidence demonstrated the statute had been punitively applied to him; the trial court denied his motion.

In support of his argument that the SVP statute was punitively applied to him, Dodson points to evidence showing that under his 2008 commitment order and pending his 2013 trial, he had not received outpatient treatment, was required to wear a leg monitor, and was required to live at a camera-monitored transitional facility, enclosed by a fence topped with barbed wire. Among other requirements, the terms of the order require that Dodson reside in a Texas residential facility, that Dodson allow the State to fit him with satellite monitoring equipment, and that Dodson remain at the facility unless given permission to leave. *See* Tex. Health &

3

Safety Code Ann. § 841.082 (West Supp. 2013); *see also Fisher*, 164 S.W.3d at 648.

But, restrictions like those Dodson showed that he has faced do not necessarily mean that the purpose of the restrictions was to punish Dodson for his past crimes. In *Hendricks*, the Supreme Court concluded that the "'mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment.'" *Kansas v. Hendricks*, 521 U.S. 346, 363 (1997) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). Although Dodson acknowledges *Fisher's* holding in his brief, he contends that his confinement, unlike Fisher's, "resembles the punishment of imprisonment[.]" The evidence Dodson points to in his brief does not persuade us that the SVP statute was punitively applied. Punishment was not the purpose of Dodson's placement at the transitional facility; he was placed there to receive treatment and to protect the public from his inability to control his sexually abnormal behavior. Also, while at the facility, Dodson has received treatment for his behavioral abnormality. And, that Dodson has not committed other sexually violent crimes while living at the facility is evidence showing the public is being protected from the difficulty Dodson has in controlling his behavioral abnormality.

4

There is other evidence showing that the restriction of Dodson to a specific facility was not intended as punishment. For instance, Dodson has not been totally restricted to the facility; he acknowledges that in 2012, he was allowed nine supervised trips from the facility to run various errands. Dodson has not shown that the persons who are in charge of him have not allowed him, when reasonable, to temporarily leave the facility. The evidence before the trial court shows that Dodson's living arrangement is serving the SVP's statutory goals of providing treatment and protecting the public from a person who the jury determined to be a sexually violent predator. The restrictions Dodson's evidence demonstrates that he has faced are not substantially different from the restrictions that were described by the Texas Supreme Court in *Fisher*. *Fisher*, 164 S.W.3d at 645-53.

In *Fisher*, the Texas Supreme Court concluded that the types of restrictions at issue were not necessarily evidence showing that the statute was punitive in nature. If the restrictions themselves are not necessarily punitive in nature, then their application to a person who is committed is also not necessarily evidence that the restrictions have been punitively applied. *Id.* at 648 (reasoning that the SVP statute's creating restraints, such as requiring persons to reside at particular locations, to be fitted for satellite monitoring, and to be restricted in a host of activities, did not "compel a conclusion that the statute is punitive").We are bound

to follow *Fisher* until the Texas Supreme Court instructs otherwise. *See Lubbock Cnty., Tex. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002) ("It is not the function of a court of appeals to abrogate or modify established precedent.").

Dodson also argues that the evidence from his trial shows that given the medical treatments he has received, there is no realistic prospect that he will improve or be cured of his behavioral abnormality. According to Dodson, subjecting him to these treatments amounts to punishment. However, that Dodson's treatment may prove ineffective does not necessarily mean that Dodson is being punished.

In *Hendricks*, the United States Supreme Court rejected the argument that the Kansas SVP Act was punitive because the medical treatment the State gave Hendricks might not result in a cure. 521 U.S. at 365-69. The *Hendricks* Court explained that none of its prior holdings indicated that "the Constitution prevents a State from civilly detaining those for whom no treatment is available, but who nevertheless pose a danger to others." *Id.* at 366. The Texas SVP statute, like the Kansas Act that the United States Supreme Court addressed in *Fisher*, is aimed at public safety and treatment, not punishment. *Fisher*, 164 S.W.3d at 647. We reject Dodson's argument that the SVP statute has been punitively applied to him

6

because the health care treatment he received may not ultimately cure his behavioral abnormality. *See Hendricks*, 521 U.S. at 365-69.

Dodson also argues that the statute is punitive because his commitment is indefinite. However, Dodson can gain his release from the restrictions placed on him if his behavioral abnormality changes to the extent that he is no longer likely to engage in a predatory act of sexual violence. *See* Tex. Health & Safety Code Ann. § 841.081(a) (West 2010). Additionally, the SVP statute provides Dodson with a right to a biennial review of his status, as well as the right to file an unauthorized petition for release. *See id.* §§ 841.102, 841.123 (West 2010); *Fisher*, 164 S.W.3d at 641-42. While Dodson may ultimately face restrictions that prove permanent if he is never successful in gaining the ability to control his behavioral abnormality, the fact that his commitment might prove permanent is not evidence demonstrating that the statute is being punitively applied. *See Hendricks*, 521 U.S. at 363. The purpose of the SVP statute is to provide treatment to help Dodson gain the ability to control his behavioral abnormality and to protect the public until he gains such control. Having considered each of Dodson's arguments, we conclude that he has not shown that the SVP statute is being applied to him in a punitive manner. We overrule issue one.

In issue two, Dodson suggests the SVP statute is unconstitutional because it is vague and ambiguous. According to Dodson, the commitment order's paragraph requiring that he reside in "a Texas residential facility under contract with the [Office of Violent Sex Offender Management (OVSOM)] or at another location or facility approved by the [OVSOM]" has allowed his confinement in the Southeast Texas Transitional Center for over three years. *See* Tex. Health & Safety Code Ann. § 841.082(a)(1).

The trial court's commitment order tracks the language used in section 841.082(a)(1) of the Texas Health and Safety Code. Section 841.082(a)(1) allowed the trial court to require that Dodson reside at a location under contract with OVSOM. *See id.* The Texas Supreme Court and our Court have previously considered and rejected arguments that claimed the SVP statute, which allows courts to require that persons committed for treatment live at a facility under contract with OVSOM, are unconstitutionally vague. *See Fisher*, 164 S.W.3d at 654-56; *In re Commitment of Morales*, 98 S.W.3d 288, 291 (Tex. App.—Beaumont 2003, pet. denied); *In re Commitment of Mullens,* 92 S.W.3d 881, 888 (Tex. App.—Beaumont 2002, pet. denied). We follow our prior holdings in *Morales* and *Mullens*, and we reject Dodson's argument that the SVP statute is

8

unconstitutionally vague based on the requirement that he live at a facility under contract with OVSOM.

Dodson also asserts that the trial court's failure to accept his seven proposed amendments to the order leaves the order unconstitutionally vague; additionally, he complains that the Health and Safety Code does not "require an evaluation for a behavioral abnormality by a neutral expert." The record does not show that Dodson raised these arguments when the case was before the trial court. Dodson's arguments on appeal are not consistent with the arguments he presented at trial; therefore, his remaining issue two arguments were not properly preserved for our review on appeal. *See* Tex. R. App. P. 33.1(a)(1) (preserving error for appellate review requires the complaining party to show that he presented his complaint to the trial court in a timely request, objection, or motion and that the trial court ruled on the request); *Karenev v. State*, 281 S.W.3d 428, 434 (Tex Crim. App. 2009); *In re Commitment of Johnson*, 153 S.W.3d 129, 131-32 (Tex. App.—Beaumont 2004, no pet.). We overrule issue two.

In issue seven, Dodson argues the SVP statute is unconstitutional because it has been retroactively applied to him. *See* Tex. Const. art. I, § 16. According to Dodson, in 1984, he was unaware that the State might use his 1984 conviction, a conviction attained through a plea-bargain agreement, in a later effort to civilly

9

commit him as an SVP. Had the SVP statute not been enacted, Dodson notes that he could live where he wants to live and that he could have a job allowing him to earn money.

Generally, the constitutional prohibition against the enactment of a retroactive law does not apply to civil statutes. *See Fisher*, 164 S.W.3d at 653 ("Because the SVP statue is civil, and it is not punitive, the prohibition against ex post facto laws does not apply."). The Texas Supreme Court has explained that "prohibition against retroactive application of laws does not apply to procedural, remedial, or jurisdictional statutes, because such statutes typically do not affect a vested right." *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia*, 324 S.W.3d 544, 548 (Tex. 2010). The Legislature's findings concerning the SVP statute indicate that the statute was intended to be a remedial statute. *See In re Commitment of Bradshaw*, No. 09-12-00570-CV, 2013 Tex. App. LEXIS 13511, at **12-13 (Tex. App.—Beaumont 2013, pet. filed) (mem. op.). And, the SVP statute is a civil statute that is not punitive. *See id.* at *12. Therefore, the application of the SVP statute to Dodson does not violate the Constitution's prohibition against the enactment of a retroactive law. *See id.* at **13-15; *see also* Tex. Const. art. I, § 16.

Because the SVP statute is a remedial statute and does not fix liability for prior criminal conduct, the statute has not affected Dodson's 1984 plea agreement.

10

*See Fisher*, 164 S.W.3d at 648-50. Under the SVP statute, Dodson's prior criminal conduct is used for evidentiary purposes, either to demonstrate that a "behavioral abnormality" exists or to support a finding of future dangerousness. *Id*. We reject Dodson's claims that the SVP statute's application in his case resulted in a violation of Texas's constitutional prohibition against the enactment of a retroactive law. *See* Tex. Const. art. I, § 16. We overrule issue seven.

Counterclaim for Injunctive Relief

In issue three, Dodson argues the trial court erred by denying his request to enjoin OVSOM from exercising control over him. At trial, the trial court declined to address the merits of the claims in Dodson's counterclaim against OVSOM; the trial court explained that whether OVSOM was following the statute would be a "[d]ifferent case." Presumably, the trial court made that statement because OVSOM was not a party in Dodson's commitment proceeding. Dodson argues that by failing to address the issues he raised in his counterclaim against OVSOM, the trial court denied him access to the courts. But, OVSOM was not a party to the commitment proceeding, and the trial court addressed his counterclaim against OVSOM by explaining that a case against OVSOM would be a different case.

We agree with the trial court that a case involving OVSOM or its officials would be a "different case." Absent a statute providing an express waiver, claims

11

for prospective injunctive relief are generally required to be asserted against governmental actors in their official capacities; the State and its political subdivisions are immune from such claims. *See Lowell v. City of Baytown*, 356 S.W.3d 499, 502 (Tex. 2011) (noting that claims for prospective and injunctive relief under a statute that did not authorize such relief "must be brought against the relevant government officials, rather than the governmental entity itself"); *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621-22 (Tex. 2011) (concluding that absent an express waiver authorizing such claims against the agency, a claim for declaratory relief due to an agency's actions under a statute must be brought against individual governmental actors). Neither OVSOM nor the government officials employed by OVSOM were parties to Dodson's commitment proceeding. And, it does not appear that OVSOM would be a proper party to a proceeding that addressed the claims in Dodson's counterclaim, as the SVP statute does not contain a provision waiving OVSOM's governmental immunity. *See generally* Tex. Health & Safety Code Ann. §§ 841.001-.151.

By stating that a claim against OVSOM would be a "different case," the trial court did address Dodson's counterclaim. The SVP statute does not expressly waive OVSOM's immunity from claims like those asserted in Dodson's counterclaim seeking declaratory relief. We conclude the trial court did not err by

12

refusing to address Dodson's counterclaim on the merits, as the proper parties against whom Dodson would need to sue were not before the trial court. We overrule issue three.

## Trial Procedure and Expert Testimony

### *Opening Statement*

In issue four, Dodson complains that during opening statement, the trial court allowed the State's attorney to describe in detail the evidence the State's expert would use during trial to support the expert's conclusions. With respect to opening statement, Rule 265 of the Texas Rules of Civil Procedure provides the guiding rule. Under Rule 265: "The party upon whom rests the burden of proof on the whole case shall state to the jury briefly the nature of his claim or defense and what said party expects to prove and the relief sought." Tex. R. Civ. P. 265(a). Rule 265 "does not afford counsel the right to detail to the jury the evidence which he intends to offer, nor to read or display the documents and photographs he proposed to offer." *Guerrrero v. Smith*, 864 S.W.2d 797, 799 (Tex. App.—Houston [14th Dist.] 1993, no writ).

The burden of proof in an SVP case is on the State. *See* Tex. Health & Safety Code Ann. § 841.062 (West 2010). In opening statement, trial courts may exercise reasonable control over the attorneys' presentations. Generally, by

detailing the evidence during opening statement, counsel may place matters before the jury before the trial court has the opportunity to determine whether the details mentioned by counsel in opening statement are admissible. If the evidence the trial court later admits into evidence differs from the evidence mentioned in opening statement, the information the jury heard in opening statement may cause the jury to be confused regarding the evidence it should consider in deciding the case. *See Ranger Ins. Co. v. Rogers*, 530 S.W.2d 162, 170 (Tex. Civ. App.—Austin 1975, writ ref'd n.r.e.).

In Dodson's case, the details about the evidence that were mentioned by the State's attorney during opening statement are consistent with the evidence admitted in Dodson's trial. Even if the trial court should have limited the State's opening regarding the details at issue, a matter we need not decide, Dodson was not harmed by counsel's opening statement because the details at issue were later proven during the trial. *See* Tex. R. App. P. 44.1; *In re Commitment of Young*, 410 S.W.3d 542, 556 (Tex. App.—Beaumont 2013, no pet.); *Guerrero*, 864 S.W.2d at 799-800. We overrule issue four.

*Expert Testimony*

In issue six, Dodson argues the trial court should have granted his motion to strike the testimony of Dr. Michael Arambula, the State's psychiatrist. According

to Dodson, Dr. Arambula's testimony should have been excluded because his opinions are unreliable and conclusory.

However, Dodson's request to exclude Dr. Arambula's testimony was not timely, as he first asked the trial court to exclude Dr. Arambula's testimony the day after the jury heard the testimony. Dodson's request at that point was untimely; under the trial court's docket control order, motions to exclude expert witness testimony were required to be filed before trial, absent leave of court. The record does not show the trial court extended that docket control order's deadline.

We have consistently applied the rule that a timely objection must be made to preserve a claim challenging the reliability of an expert's testimony on appeal. In a similar SVP case raising a reliability challenge, we explained: "If an expert opinion has a supporting basis, but there is a reliability challenge that requires the trial court to evaluate the underlying methodology, the defendant must make a timely objection so that the trial court has the opportunity to conduct this analysis." *In re Commitment of Grunsfeld*, No. 09-09-00279-CV, 2011 Tex. App. LEXIS 1337, at *16 (Tex. App.—Beaumont Feb. 24, 2011, pet. denied) (mem. op.); *see also City of San Antonio v. Pollock*, 284 S.W.3d 809, 817-18 (Tex. 2009). Given Dodson's untimely request to strike Dr. Arambula's testimony, the trial court was not given any time to evaluate the methodology used by the State's expert before

15

the testimony was admitted. *See Grunsfeld*, 2011 Tex. App. LEXIS 1337, at *16. By failing to timely challenge the reliability of Dr. Arambula's opinions, Dodson has waived appellate review of his complaint that Dr. Arambula's opinions were not reliable. *See* Tex. R. App. P. 33.1(a).

Nevertheless, one aspect of Dodson's argument, that Dr. Arambula's testimony is wholly conclusory, is essentially a no-evidence claim; consequently, it is the type of claim that an appellant may raise for the first time in his appeal. *See Pollock*, 284 S.W.3d at 816. We reach that aspect of Dodson's argument.

In forming his opinions about the likelihood that Dodson would reoffend, Dr. Arambula explained that he interviewed Dodson and reviewed records containing information about Dodson's sexual history. Additionally, the record shows that Dr. Arambula is licensed as a psychiatrist, he reviewed records of the type typically relied upon by health experts in making SVP assessments, he assessed Dodson in a manner that was consistent with his training, and he explained how he used Dodson's records in forming his opinions. For example, Dr. Arambula explained that he relied on Dodson's prior convictions, in part, to form his opinion that Dodson suffers from a "behavioral abnormality." He also explained that Dodson's personality traits, an antisocial personality and a paraphilia, not otherwise specified (with sadistic features), contributed to his

16

opinion. Dr. Arambula discussed Dodson's risk factors for committing future offenses, and he mentioned how these factors contributed to his opinion that Dodson would likely reoffend. Dr. Arambula also explained that Dodson, in his opinion, needed further sex offender treatment. After explaining how he formed his opinions, Dr. Arambula testified that Dodson, in his opinion, has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

The record demonstrates that Dr. Arambula presented "a reasoned judgment based upon established research and techniques for his profession[.]" *See In re Commitment of Day*, 342 S.W.3d 193, 206 (Tex. App.—Beaumont 2011, pet. denied). The record does not support Dodson's assertion that Dr. Arambula expressed opinions that were wholly conclusory. Because Dodson's issue six arguments are either not properly preserved for our review or are without merit, we overrule issue six.

### *Closing Argument*

In issue five, Dodson complains about various arguments the State's attorney made to the jury during her closing argument. To obtain a reversal based on an error that arises during jury argument, the appellant must show "'(1) an error (2) that was not invited or provoked, (3) that was preserved by the proper trial predicate, such as an objection, a motion to instruct, or a motion for mistrial, and

17

(4) was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge.'" *In re Commitment of Eeds*, 254 S.W.3d 555, 560 (Tex. App.—Beaumont 2008, no pet.) (quoting *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839 (Tex. 1979)).

Generally, proper jury argument falls into one of these areas: (1) a summation of the evidence, (2) a reasonable deduction from the evidence, (3) an answer to an argument made by opposing counsel, or (4) a plea for the enforcement of a law. *See generally* Tex. R. Civ. P. 269(b), (e); *see also Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). Arguments that are presented to juries in closing are to be confined "strictly to the evidence and to the arguments of opposing counsel." Tex. R. Civ. P. 269(e).

During the State's closing argument, Dodson's attorney objected when the State's attorney mentioned several specific factual details about Dodson's sexual conduct toward a victim, details that related to one of Dodson's prior criminal convictions. Dodson argues that the details mentioned in closing were outside the scope of the evidence and violated the trial court's limiting instruction. Dodson's argument that the details at issue were not in evidence is not supported by the record. During the trial, one of the State's experts, Dr. Dunham, mentioned the details about the matters the State's attorney referenced in her closing argument.

Therefore, there was evidence before the jury on the matters at issue. We conclude that the State's closing argument was a summation of the evidence before the jury, and that it was not improper. *See In re Commitment of Lovings*, No. 09-13-00024-CV, 2013 Tex. App. Lexis 12927, at *4 (Tex. App.—Beaumont Oct. 17, 2013, no pet.) (mem. op.).

The remaining complaints Dodson makes about final argument concern arguments made by State's counsel in response to the arguments advanced by Dodson's counsel.[2] *See* Tex. R. Civ. P. 269(e). Dodson's argument ignores that in final argument, the attorneys for a party may reply to the arguments presented by the opposing party. *See id.*; *In re Commitment of Garcia*, No. 09-12-00194-CV, 2013 Tex. App. LEXIS 14986, at *11 (Tex. App.—Beaumont Dec. 12, 2013, pet. denied) (mem. op.). We hold the trial court did not abuse its discretion by allowing the State to respond to the arguments of Dodson's attorney. *See* Tex. R. Civ. P. 269(e).

We conclude the trial court did not abuse its discretion by viewing the State's closing arguments either as proper summation of matters in evidence or as

---

[2]Even though Dodson failed to secure a ruling on some of his objections during final argument, the instances where that occurred reflect that the parties implicitly understood from the trial court's statements that Dodson's objections were being overruled. *See* Tex. R. App. P. 33.1(2)(B).

arguments responsive to the arguments advanced by Dodson's attorney. We overrule issue five.

## Motion to Modify

In issue eight, Dodson argues the trial court committed error when it failed to grant his post-trial motion. In his post-trial motion, Dodson argued the order the trial court rendered failed (1) to provide him with adequate treatment so that he could complete OVSOM's sex offender treatment program, (2) to authorize his leaving OVSOM's secure facility to seek or maintain employment, or (3) to provide him with adequate medical and dental care. Dodson also complains that the sweep of the commitment order has allowed OVSOM to subject him to tests that include polygraphs and penile plethysmographs, tests he is required to take despite his lack of consent. Dodson's post-trial motion was timely. *See* Tex. R. Civ. P. 329b.

Under section 841.082 of the SVP statute, the trial court retains jurisdiction over a person's SVP case and is statutorily authorized to modify the requirements imposed through its commitment orders. *See* Tex. Health & Safety Code Ann. § 841.082(d), (e). Dodson's motion to modify was considered by the trial court by submission. Section 841.082 provides a mandatory list of matters that a trial court's commitment order must include. *See id.* § 841.082(a)(1)-(8).

20

The commitment order the trial court entered complies with the mandatory requirements of section 841.082. *Id*. The various terms Dodson suggested that the trial court should include in ordering his commitment are not required by statute to be in the order. *See id*. While a trial court in an SVP proceeding is authorized to include additional provisions in the commitment order that are "necessary," the trial court could reasonably conclude that the terms Dodson wanted in the order were unnecessary. *Id*. § 841.082(8) (authorizing the trial court in the commitment order to include "any other requirements determined necessary by the judge").

Finally, Dodson revisits his claim that the commitment order authorizes his punishment. We have previously explained that the goals of the SVP program are to promote public safety and treatment. *See Fisher*, 164 S.W.3d at 647. These twin goals are consistent with the provisions found in Dodson's order of commitment.

We conclude that Dodson has not shown that the trial court abused its discretion by incorporating the statutory requirements in its commitment order. *See In re Commitment of Rhynes*, No. 09-12-00404-CV, 2013 Tex. App. LEXIS 10283, at **5-6 (Tex. App.—Beaumont Aug. 15, 2013, no pet.) (mem. op.) (citing *In re Commitment of Cortez*, 405 S.W.3d 929, 935-36 (Tex. App.—Beaumont 2013, no pet.)); *see also* Tex. Health & Safety Code Ann. § 841.082(a). We further conclude that Dodson has not shown that the additional conditions he requested be placed in

21

his commitment order were necessary, either for his treatment or to protect the public from him. Issue eight is overruled. Having overruled each of Dodson's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on November 6, 2013
Opinion Delivered May 29, 2014

Before McKeithen, C.J., Kreger and Horton, JJ.