In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00577-CV
_____


IN RE COMMITMENT OF PAUL AYALA JR.

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 13-05-04992 CV

**MEMORANDUM OPINION**

Paul Ayala Jr. challenges his civil commitment as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2014) (the SVP statute). In two issues, Ayala contends the trial court erred: (1) in failing to grant a motion for a mistrial and, (2) in failing to strike the testimony of the State's expert. We conclude Ayala's issues are without merit, and we affirm the trial court's judgment.

Motion for Mistrial

In issue one, Ayala contends the trial court erred in denying Ayala's motion for mistrial. A psychiatrist, Dr. Michael Arambula, testified as an expert for the

State during Ayala's trial. He testified that he charges $250 per hour. Without objection, Dr. Arambula testified that in the past he had been asked to perform an evaluation for the State Counsel for Offenders. Dr. Arambula stated that he did not perform an evaluation for that office because he was retained by the Special Prosecution Unit in two cases at that time, and he had no objection to working for the State Counsel for Offenders or for a private defense attorney in a civil commitment case. Ayala's counsel cross-examined Dr. Arambula, asking him if it would be a conflict of interest "testifying for both sides at the same time?" Dr. Arambula agreed that it would be a conflict of interest. Further cross-examination established that Dr. Arambula estimated he would testify for the Special Prosecution Unit in approximately fifteen cases in the current year and would receive approximately $5,000 for his services in each case. During re-direct examination, counsel for the State asked Dr. Arambula, "Do you know how much the expert for State Counsel for Offenders was paid in this case?" Dr. Arambula said, "No." Counsel for the State then commented, "There isn't one." Ayala objected to the State's mentioning of any potential expert for Ayala because whether Ayala had an expert was irrelevant and the comment improperly shifted the burden of proof to Ayala. Ayala requested an instruction for the jury not to consider whether he had an expert, and moved for a mistrial. The trial court

2

instructed the jury to disregard the statement made by the State's counsel but denied Ayala's request for a mistrial.

We review the trial court's decision to deny a motion for a mistrial for abuse of discretion. *In re Commitment of Hill*, No. 09-11-00593-CV, 2013 WL 772834, at *12 (Tex. App.—Beaumont 2013, pet. denied) (mem. op.). We consider whether the trial court's instruction to disregard could remove the harmful effect from the improper comment. *See In re M.M.L.*, 241 S.W.3d 546, 555 (Tex. App.—Amarillo 2006, pet. denied). Ayala argues that the State "planted the seed within the jury that Respondent should provide an expert witness to speak on his behalf in order to counter the testimony of the State's expert witness." But, the jury had already been informed that a psychiatrist could testify on behalf of the respondent in a civil commitment proceeding before the State's counsel remarked that Ayala did not have an expert; therefore, the comment did not inject a matter about which no facts were in evidence.

Ayala suggests that the comment "was probably intentional" because it was the only question asked on re-direct, but the trial court in its discretion could have decided the comment was inadvertent rather than deliberate. The State's comment is not so clearly calculated to inflame the minds of the jurors as to suggest the impossibility of withdrawing the impression produced by the comment. *See id.* The jury was reminded of the burden of proof when it received the charge. Ayala's

3

counsel reminded the jury that the burden of proof remained with the State and that Ayala did not need to "present any witnesses[]" or "disprove anything" the State's witness said. The trial court reminded the jury that the State had the burden of proof in its oral instructions to the jury and in the written charge. After reviewing the record as a whole, we conclude the trial court did not abuse its discretion in denying Ayala's motion for mistrial. We overrule Ayala's first issue.

Motion to Strike Expert Testimony

In issue two, Ayala contends the trial court erred by denying Ayala's motion to strike Dr. Arambula's testimony. Ayala did not file a motion to exclude Dr. Arambula's testimony by the date set in the docket control order, nor did he object when Dr. Arambula testified. After Dr. Arambula completed his testimony, Ayala moved to strike the testimony as "irrelevant and unreliable[]" because Dr. Arambula employed flawed methodology and "provided . . . no information . . . to close the analytical gap." The trial court overruled the motion.

A motion to strike the expert's testimony, made after the testimony concludes, is not a timely challenge to the reliability of the expert's underlying methodology. *In re Commitment of Dodson*, 434 S.W.3d 742, 749-50 (Tex. App.—Beaumont 2014, pet. filed). To the extent that Ayala is arguing that Dr. Arambula failed to bridge the analytical gap between the data and his proffered opinion, however, the challenge may be made for the first time on appeal. *See id.* at 750.

4

In his brief for the appeal, Ayala argues that Dr. Arambula failed to establish that he uses a peer-reviewed methodology. Contrary to this assertion, Dr. Arambula testified that the methodology he employs in performing forensic evaluations, including his evaluation of Ayala, is the methodology followed by experts in his field. Dr. Arambula described his methodology, as follows:

> The format is basically a clinical exam, as if somebody were coming to see a psychiatrist. So I -- we don't -- we don't only cover mental things. We cover developmental, social, we look at relationships, work histories, performance in school, on the gridiron, things like that, really to kind of get an idea of what an individual's upbringing was like. Then we look at their -- what their lives, you know, their relationships have been like, we cover medical issues, because we're physicians first, surgical issues, struggles with mental illness, substance abuse, drugs, things like that.

> And then once we collect all of that information, then we move on to the forensic questions, which, in these cases, have to do with sex offenses. So we cover as much information as the person will report to me regarding their sex offense, because I'm looking for risk factors, both static risk factors and dynamic risk factors, in the details that they're giving me.

> Because they -- these individuals have been in prison, I look to see how they've adjusted to the structure of prison, what kind of things they've done to better themselves, and really important, what kind of treatment they've been in and what are the benefits that they can tell me about that they received being in treatment, since I previously provided treatment.

> And, lastly, as I'm doing all of this, I'm assessing an individual's thinking, how they reason, sometimes the questions are pointed so I see how they handle anxiety or being under stress with the subject matter. I look for coping mechanisms, like denial, projection, rationalization, things like that. And I'm not doing that

5

with anybody here today, by the way, but that's what I do during an exam, is I'm taught to do that.

Dr. Arambula also explained the difference between providing psychiatric treatment, where his ethical duty is to the person, as opposed to a forensic evaluation, where he is trying to objectively answer the question, as follows:

> Well, as a patient, I'm always on the patient's side. I'm an -- a patient advocate. And that's what guides me through the process. So if somebody tells me something that sounds like a rationalization, which is a big word for an excuse, then I don't confront patients until over time we subtly arrive at the reality of what happened together. So I don't do that because I'm the patient's advocate.

> As a forensic expert, I'm just asked to answer some questions, medical/legally, and so I cut right to the chase and I don't have that advocacy role as a forensic examiner, like I did being a treater.

Ayala isolates one quote by Dr. Arambula to support his argument that Dr. Arambula failed to demonstrate that Ayala suffers from a behavioral abnormality that is sufficiently severe as to distinguish him from a typical recidivist convicted in an ordinary criminal case. When asked if it was significant that Ayala committed a sexual assault while on parole, Dr. Arambula answered,

> Yes, in and of itself. But I think you're overlooking that the -- the other detail, which is that it's not normal for a man to be sexually aroused by beating up a woman before they're going to have sex and then forcing her. And while some people can sometimes practice anal sodomy, with regards to sex offenders, it's a particularly humiliating type of sexual assault, even though vaginal rape is just as humiliating.

6

Ayala argues this statement fails to bridge the analytical gap between a typical recidivist and a sexually violent predator. That was not, however, the sole basis for Dr. Arambula's opinion. For instance, Dr. Arambula stated it was clinically significant that after he was charged with that offense, Ayala committed a sexual offense against his jail cellmate. That offense indicated a lack of control, in part because Ayala was in a controlled environment and under observation. After serving time in prison for those offenses, Ayala committed a sexual offense against his eight-year-old stepdaughter. Dr. Arambula also found it to be clinically significant that during their interview Ayala denied having committed the offenses and explained his guilty pleas as attempts to protect his victims. In forming his opinion, Dr. Arambula also relied upon psychological testing that included a Static-99 score of seven, an actuarial test score that is associated with high risk of re-offending. Using the Diagnostic and Statistical Manual (DSM), Dr. Arambula diagnosed Ayala with sexual deviance, paraphilia not otherwise specified with sadistic features, and antisocial personality disorder.

Ayala acknowledges that Dr. Arambula relied on the diagnostic manuals that psychiatrists use to diagnose mental illness, but argues that Dr. Arambula fails to bridge the analytical gap because he failed to cite to a peer-reviewed opinion to support Dr. Arambula's statement that "one of the major shortcomings of the DSM with regards to the sexually deviant chapter is that they require that the action and

urges be there for six months, which doesn't exist anywhere in the literature." Dr. Arambula testified that but for the six-month requirement, he would have diagnosed Ayala with sadism and pedophilia. Thus, Ayala is arguing that Dr. Arambula failed to cite additional supporting literature for a diagnosis he did not make.

After reviewing the entire record, we conclude that Dr. Arambula provided a sufficient basis for his opinion for the trial court to rule that the opinion would assist the jury. *See* Tex. R. Evid. 702-705. The trial court did not abuse its discretion when it denied Ayala's motion to strike Dr. Arambula's testimony. We overrule issue two and affirm the trial court's judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice


Submitted on October 15, 2014
Opinion Delivered February 5, 2015

Before McKeithen, C.J., Kreger and Johnson, JJ.

8