**Opinion issued April 15, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-23-00570-CV**

———————————

## IN RE COMMITMENT OF NATHANIEL HAWKINS

**On Appeal from the 177th District Court**
**Harris County, Texas**
**Trial Court Case No. 0727433-0101Z**

## MEMORANDUM OPINION

This is a civil-commitment action under the Sexually Violent Predators Act ("SVP Act"). *See* TEX. HEALTH & SAFETY CODE §§ 841.001–.209. The State of Texas brought this case to have Nathaniel Hawkins civilly committed for involuntary treatment and supervision as a sexually violent predator. The jury unanimously found in favor of Hawkins, and the trial court entered judgment on the

jury's verdict. The State raises a single issue on appeal, arguing the trial court improperly denied it the right to present a rebuttal argument in closing. We affirm.

## I. The SVP Act

The SVP Act requires the State to prove that a person is a "sexually violent predator" before he can be civilly committed. *See id.* § 841.062. A sexually violent predator is someone who (1) is a "repeat sexually violent offender" and (2) "suffers from a behavioral abnormality that makes [him] likely to engage in a predatory act of sexual violence." *Id.* § 841.003(a). A person is a repeat sexually violent offender if he is convicted of more than one "sexually violent offense" and a sentence is imposed on at least one of those convictions. *Id.* § 841.003(b). A behavioral abnormality is a "congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2). The State must prove these elements "beyond a reasonable doubt," and in a jury trial, the verdict must be unanimous. *Id.* § 841.062.

## II. Background

At trial, the State presented testimony from two witnesses: Hawkins and Dr. Christine Reed, a clinical and forensic psychologist who evaluated Hawkins for a behavioral abnormality under the SVP Act. The State also presented documentary evidence in the form of Dr. Reed's curriculum vitae and three "penitentiary packets"

reflecting Hawkins' convictions and sentences. Other than his cross-examination of Dr. Reed and his direct testimony, Hawkins did not present any evidence.

## A. "Repeat sexually violent offender" element

Regarding the "repeat sexually violent offender" element, the State introduced evidence that Hawkins had been convicted of two sexually violent offenses. First, in 1972, he was convicted of rape for which he was sentenced to ten years' confinement. This conviction involved an incident when Hawkins was seventeen years old and working at a cemetery. The victim, a sixty-nine-year-old woman, was placing flowers on her deceased husband's grave when Hawkins attacked her with his fists, raped her, locked her in the trunk of her car, and then drove her to a nearby parking lot. Hawkins generally denied that he committed the offense to Dr. Reed and at trial.

Second, in 1997 and when he was forty-two years old, Hawkins was convicted of aggravated sexual assault of a child for which he was sentenced to thirty-five years' confinement. This conviction involved an instance in which Hawkins was babysitting his eleven-year-old niece. Hawkins masturbated in front of her in a car and then made her get in the back seat, where he sexually and physically assaulted her. The niece escaped and told police Hawkins was smoking crack before the incident. Again, Hawkins generally denied that he committed the offense to Dr. Reed and at trial.

## B. "Behavioral abnormality" element

To establish the "behavioral abnormality" element, the State relied on Dr. Reed's testimony. Dr. Reed testified that after completing her education, she began working in the field of forensic psychology in 2008 and has been a forensic psychologist ever since. Dr. Reed explained that in her role as a forensic psychologist, she does not perform therapeutic work with patients aimed at rehabilitation; instead, her practice consists exclusively of assessments and evaluations for use in the legal system or in the employment-screening context. On cross-examination, Dr. Reed testified that her last involvement in the treatment of patients was during a fellowship in 2007, that she is not board certified in forensic psychology, and that she has not published in the field of sexually violent predators or performed research in recidivism. She has not previously testified for the defense in a civil-commitment proceeding. Dr. Reed testified that she has conducted approximately ninety behavioral-abnormality evaluations.

To conduct her behavioral-abnormality evaluation of Hawkins, Dr. Reed reviewed Hawkins' criminal-history records, his medical- and mental-health records, his prison records, and notes from his sex-offender treatment. She also interviewed him twice, once in January 2021 and again in November 2022. Those interviews were conducted via videoconference; Dr. Reed never met with Hawkins in person. Nor did she speak to Hawkins' family members or friends. Dr. Reed

4

testified she did not get a "complete history" for Hawkins, but she "feel[s] like [she] got an adequate history."

Based on her assessment, Dr. Reed opined that Hawkins suffers from a behavioral abnormality. She reached this opinion because Hawkins displayed the two most significant risk factors for sexual recidivism: sexual deviance and an antisocial lifestyle. Dr. Reed testified that sexual deviance is "sexual behavior that significantly deviates from the norm," and an antisocial lifestyle is one that is marked by a person's "persistent disregard [for] or violation of the rights of others." Dr. Reed came to these conclusions based in part on Hawkins' criminal history.

Dr. Reed considered it significant that Hawkins' victim in the 1972 rape was a stranger, because "[h]aving victims that are strangers to you is considered a risk factor for re-offending." She also considered the following offenses significant because Hawkins has engaged in criminal behavior beyond sexual offenses as somebody "that violates the rules," which is evidence of anti-sociality.

In 1980, about a year after he was released from prison for the 1972 rape conviction, Hawkins was convicted of false imprisonment for using a firearm to restrain his wife. Hawkins told Dr. Reed that he was separated from his wife at the time, that she had become jealous of him, and that "he just didn't have any time for it." Dr. Reed characterized Hawkins' explanation as "minimiz[ing] his behavior"

and "not taking responsibility for his actions." Hawkins received a sentence of six months in jail for this offense.

In 1990, Hawkins was convicted of two counts of criminal mischief and two counts of aggravated assault on a police officer, stemming from an incident in which he kicked in the window of his girlfriend's car and then attacked the police officers who apprehended him. Hawkins testified he had no recollection of this incident.

In 1994, when Hawkins was forty-one, he was convicted of indecent exposure and indecency with a child by exposure. These convictions stemmed from an instance in which Hawkins exposed his genitals to a two-year-old girl. The girl's mother asserted she saw Hawkins masturbating and exposing himself to her daughter while making profane comments. When the police arrived, they found Hawkins nearby with his genitals exposed. The police described Hawkins as smelling of alcohol, and they found drug paraphernalia near him. Hawkins denied having committed the offense to Dr. Reed and, at trial, claimed he knew the mother, who fabricated the story to get revenge against him.

In 1996, when warrants were issued for Hawkins' arrest about four months after the aggravated sexual assault against his niece, Hawkins bit and punched two of the officers who came to arrest him. He was convicted of two counts of aggravated assault on a police officer and sentenced to thirty-five years in prison. These assault charges also resulted in the revocation of Hawkins' probation for the

6

indecency charges, thus imposing a ten-year prison sentence for those crimes. At trial, Hawkins denied biting or punching the officers.

Hawkins has also received disciplinary violations while in prison, including for sexual misconduct. In addition to being written up for non-sexual infractions such as fighting and threatening to kill an officer, Hawkins received approximately twelve disciplinary violations for conduct such as exposing himself and masturbating in the direction of female correctional officers. The most recent was in 2020, when Hawkins was sixty-six years old. Hawkins generally denies these offenses and blames others, including stating that the victim of his 2020 exposure was "one of those hot mama officers that wants everybody's attention and she thought it was happening, but it wasn't." Dr. Reed considered these significant because Hawkins again blames his victims and engages in nonconsensual sexual behavior.

Dr. Reed also found it significant that Hawkins' victims ranged in age from two to sixty-nine and that he engaged in both contact and noncontact sexual offenses. She viewed this "broad range of potential victims" and "different behaviors" as supporting a "risk to re-offend sexually." She also found meaningful the fact that Hawkins was under the influence of drugs or alcohol at the time of many of his offenses because that "puts you at risk for re-offending." She gave Hawkins a score on the Static-99 test which places him at an above-average risk of re-offending

compared to other sex offenders. And she also concluded Hawkins' age of sixty-nine years old was not a factor that reduced the risk of re-offending for him because he had engaged in sexual offenses after the ages of forty and sixty years old, which are generally markers when offending behavior declines.

Although Hawkins completed a nine-month sex offender treatment program while in prison, Dr. Reed determined that, because he denied committing any sexual offenses, "[h]e was just submitting to what the program wanted him to do." However, she also admitted research shows that "successful completion of sex offender treatment can reduce someone's risk for re-offending." Hawkins testified the program helped him "a whole lot," and he had not been cited for any sexual misconduct after completing the program.

Dr. Reed ultimately diagnosed Hawkins with three conditions relating to sexual deviancy—pedophilic disorder, exhibitionistic disorder, and unspecified paraphilic disorder with sadistic interests noted—explaining these can "predispose a person to commit a predatory act of sexual violence." But she admitted it is possible for a person to be diagnosed with all three of these conditions and not have a behavioral abnormality. She stopped short of diagnosing Hawkins with antisocial personality disorder, saying she did not have sufficient information about his childhood. She also did not classify Hawkins as a psychopath, which is a risk factor for re-offending, because he scored twenty-six on the Hare Psychopathy Checklist,

8

whereas a score of thirty is generally required to classify someone as a psychopath. And Dr. Reed conceded she could not predict at any percentage, such as fifty percent, that Hawkins would commit a sexual offense in the future and testified Hawkins "is someone that can control his behavior when he chooses to do so."

During his testimony, Hawkins, who had been in prison for twenty-seven years, admitted he exhibited antisocial traits when he was younger but believes he no longer has them. He testified the sex offender treatment he completed helped "[a] whole lot." He explained the disciplinary infractions he received early on for fighting in prison was him standing up for himself. Hawkins also said he had not consumed alcohol or drugs while in prison and he performs volunteer work, takes vocational courses, and participates in a Bible study. Overall, Hawkins believes he is "wiser and more mature" than when he first entered prison. Hawkins does not believe he will commit another sex offense or that he is a sexually violent predator.

## C.    Closing argument

After the evidence closed and the trial court read the charge to the jury, the parties presented closing argument. Before they began, the parties agreed each side would be allowed fifteen minutes for closing. The State did not specifically ask to reserve any portion of its allotted time for rebuttal, nor did the trial court ask the State if it wanted to reserve time for rebuttal.

The State's counsel began closing argument at 11:14 a.m. She spent the first minute discussing the "repeat sexually violent offender" element and then seven minutes discussing the "behavioral abnormality" element. The State's counsel noted Dr. Reed's "extensive experience" in assessing behavioral abnormalities and explained in detail the work Dr. Reed performed in diagnosing Hawkins, the foundations for her diagnoses, and why she believes he is a sexually violent predator who suffers from a behavioral abnormality that predisposes him to re-offend. The State's counsel reiterated Dr. Reed's testimony about Hawkins' risk factors of sexual deviance and anti-sociality, his "wide victim pool," the variety of his sexual offenses, some of which involved violence, his age and therapy not being mitigating factors, and his refusal to accept responsibility but to blame his victims. The State's counsel concluded her eight-minute argument at 11:22 a.m., with seven minutes remaining of the fifteen minutes allotted to each side.

Hawkins' counsel began closing argument at 11:23 a.m. He explained that the purpose of a civil commitment is not to add punishment for past crimes but to decide if a person has a behavioral abnormality that makes him a threat to society. He then challenged Dr. Reed's opinions, noting that Dr. Reed opined Hawkins can control his behavior when he wants and cannot predict the future. Hawkins' counsel attacked Dr. Reed's methodology and testing, including arguing that the Static-99 test is flawed and that Dr. Reed could not say Hawkins has a fifty-percent chance of

10

re-offending. Hawkins' counsel also challenged the factual foundations of Dr. Reed's diagnoses regarding pedophilia, unspecified paraphilic disorder, sadism, and exhibitionistic disorder, emphasizing Hawkins' testimony regarding the lifestyle changes he has made in prison and that Dr. Reed failed to research Hawkins' childhood and education. Hawkins' counsel also briefly challenged Dr. Reed's credentials and biases, specifically that she has not published regarding sex offenders, lacks a board certification, and testifies mainly for the State. Hawkins' counsel ended his fifteen-minute closing at 11:38 a.m.

When the defense finished its argument, the trial court started to instruct the jury to begin deliberations, and the State's counsel requested a bench conference. At the bench, the State's counsel requested an opportunity to rebut the defense argument, to which the trial court responded, "You didn't say at the beginning that you wanted to rebut and break your time up. I wrote it down. You used your 15 minutes up like we agreed to." The trial court repeated this multiple times to the State's counsel. The State's counsel requested additional time for rebuttal if she did use up the fifteen minutes. The trial court asked Hawkins' counsel if she would agree to give the State additional time, and she said, "We prefer not to." The trial court denied the State's request for additional time.

The jury then began its deliberations. After around thirty-five minutes, the jury asked to review all physical evidence, and the trial court sent all exhibits to the

11

jury. After around one hour and fifty minutes, the jury was brought in and its unanimous verdict finding Hawkins is not a sexually violent predator was read.

## III. Analysis

The State's sole issue is that the trial court committed reversible error when it precluded the State's counsel from presenting its rebuttal closing argument.

### A. Relevant law

Texas Rule of Civil Procedure 269 governs closing argument and, in relevant part, provides, "[t]he party having the burden of proof . . . shall be entitled to open and conclude the argument[.]" TEX. R. CIV. P. 269(a). We review a trial court's rulings regarding closing argument for an abuse of discretion. *See In re Commitment of Dodson*, 434 S.W.3d 742, 751 (Tex. App.—Beaumont 2014, pet. denied). An abuse of discretion regarding closing argument is subject to harmless-error analysis and does not require reversal unless it "probably caused the rendition of an improper judgment." TEX. R. APP. P. 44.1(a)(1); *Bryant v. Lucent Techs., Inc.*, 175 S.W.3d 845, 850 (Tex. App.—Waco 2005, pet. denied). In considering harm, we examine the entire record. *See Gunn v. McCoy*, 554 S.W.3d 645, 676 (Tex. 2018). Whether an error probably caused the rendition of an improper judgment "necessarily is a judgment call entrusted to the sound discretion and good senses of the reviewing court." *McCraw v. Maris*, 828 S.W.2d 756, 758 (Tex. 1992).

**B.     Analysis**

Assuming the trial court abused its discretion when it disallowed the State's counsel from presenting rebuttal argument when she had time left, we conclude the error was not harmful.[1]

The State contends the error was reversibly harmful because it precluded the State from rebutting Hawkins' "prolonged attacks on Dr. Reed's qualifications, training, knowledge, methods, conclusions, bias, and ultimate opinion." The State does not suggest what additional argument it would have made during rebuttal that was critical for the jury to understand regarding Dr. Reed and that was not already made during the State's presentation of the evidence and its eight-minute closing argument. *See Vasquez v. State*, 484 S.W.3d 526, 532–33 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("In evaluating whether a defendant was harmed by the trial court's exclusion of the defendant's argument, an appellate court may consider the extent to which the defendant communicated his argument despite the trial court's rulings.").

---

[1]     In arguing reversible error, the State relies on a 1945 case in which the trial court's refusal to permit rebuttal argument was held to be erroneous and presumed injurious even though there was no record of the four days of trial testimony. *Stolpher v. Bowen Motor Coaches*, 190 S.W.2d 376, 379–80 (Tex. App.—Fort Worth 1945, writ ref'd w.o.m.). Because *Stolpher* was decided before the adoption of harmless-error analysis in Rule 44.1(a), and because we have the full record of trial testimony allowing us to conduct a harmless-error analysis, we conclude *Stolpher* is distinguishable.

This case did not involve dense, confusing evidence and convoluted issues that the parties' argument would particularly aid the jury in deciphering. *See Dang v. State*, 154 S.W.3d 616, 621 (Tex. Crim. App. 2005) (recognizing factors to be considered in determining whether trial court improperly limited time for closing include "the quantity of the evidence," "the duration of the trial," "conflicts in the testimony," and "the complexity of the case"). The parties presented their evidence in one day, during which only two witnesses testified, Dr. Reed and Hawkins. As set forth above, the State presented evidence regarding Hawkins' past sexually violent offenses, his long history of additional sexual and non-sexual offenses and disciplinary issues in prison, and Dr. Reed's detailed opinions regarding Hawkins' diagnoses and bases for those opinions. Hawkins likewise presented testimony for why he is a different person after twenty-seven years in prison and not a continuing threat. Only four exhibits were admitted with a combined total of thirty-six pages. The jury requested and was provided with these exhibits during deliberations. The first exhibit was Dr. Reed's curriculum vitae detailing her educational background, including her doctoral and post-doctoral emphasis in psychology, and her extensive professional, clinical, research, and teaching experience. The remaining exhibits were penitentiary packets regarding Hawkins' criminal convictions. The jury charge was not complicated, contained instructions that tracked the requirements of the SVP

14

Act, and had a single question asking whether the jury found "beyond a reasonable doubt that [Hawkins] is a sexually violent predator[.]"

Accordingly, the jury reviewed Dr. Reed's qualifications and the details of Hawkins' offenses as it deliberated Dr. Reed's opinions that Hawkins' is a sexually violent predator predisposed to re-offend, and Hawkins' testimony that he has changed his ways and is not a threat to society. Notwithstanding the absence of a rebuttal argument, the jury heard competing argument from the State and Hawkins regarding the credibility of Dr. Reed's opinions. After almost two hours of deliberation, the jury unanimously chose to disbelieve Dr. Reed's ultimate opinion that Hawkins is a sexually violent predator, as was its prerogative to do. *See In re Commitment of Williams*, 539 S.W.3d 429, 440–41 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (explaining jury has discretion to resolve conflicts regarding expert's opinion defendant is a sexually violent predator). The State has not explained why, nor do we conclude, the lack of additional argument (which, of course, is not evidentiary[2] and likely would have been cumulative of what had already been presented) probably caused the jury to rule this way.

Analogously, courts have held that improper closing argument in commitment cases did not probably cause the rendition of an improper judgment. *See, e.g.*, *In re*

---

[2]     *See Fallon v. M.D. Anderson Physicians Network*, 586 S.W.3d 58, 75 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) (recognizing lawyers' arguments are not evidence).

*Commitment of Summers*, No. 01-19-00738-CV, 2021 WL 3776751, at *16 (Tex. App.—Houston [1st Dist.] Aug. 26, 2021, no pet.) (mem. op.) (holding that, even if State made improper argument, it would not result in reversible error because "the record contains sufficient evidence from which the jury reasonably could conclude that Summers is a sexually violent predator"); *In re Commitment of Alexander*, No. 09-11-00650-CV, 2013 WL 5425557, at *9 (Tex. App.—Beaumont Sept. 26, 2013, pet. denied) (mem. op.) (holding State's improper argument did not warrant reversal because it did not likely cause "the jury to disregard their instructions to 'not let bias, prejudice, or sympathy play any part in your decision'"). Just as an improper closing argument may not be harmful error depending upon a case's circumstances, we conclude that, under this case's circumstances, the denial of rebuttal argument was not harmful. We overrule the State's sole argument.

## Conclusion

We affirm the trial court's judgment.

Andrew Johnson
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.