In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-15-00126-CV
_____

IN RE COMMITMENT OF RUDY PEREZ

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 14-06-06685 CV**

**MEMORANDUM OPINION**

The State filed a petition to commit Rudy Perez (Perez) as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2014) (SVP statute). A jury found that Perez is a sexually violent predator, and the trial court rendered a final judgment and an order of civil commitment. Perez filed an appeal. In two appellate issues, Perez argues the trial court erred by allowing the State to make an improper jury argument and by overruling Perez's objection to the jury charge and in failing to instruct the jury that a "no" finding does not require a unanimous verdict.

1

At trial, the jury heard Perez's admissions to the State's requests for admissions wherein Perez admitted pleading guilty to indecency with a child, F.A.,[1] in 1993. Perez also admitted that he was intoxicated when he sexually offended against F.A., and that he was also intoxicated when he sexually offended against S.M.[2] Perez admitted he was intoxicated when he committed the sexual offenses and that he had been arrested for public intoxication at least thirty-five times. He also admitted that he has been involved in multiple fistfights during his incarceration, he has an anger problem, and he believes he needs sex offender treatment.

The State called Perez to testify as an adverse witness. Perez testified that he was convicted in 1993 for indecency with a child, F.A., who was eight or nine years old at the time of the offense. Perez said he met F.A. when Perez went to mow F.A.'s grandmother's lawn. According to Perez, he went inside the grandmother's house to use the restroom, heard "some noises from the shower[,]" pulled back the shower curtain, and saw F.A. naked. Perez explained at trial that he

---

[1] We identify the victims by using initials. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims the "right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

[2] A 2008 judgment admitted into evidence indicated that Perez pleaded guilty to the offense of attempted indecency with a child, S.M.

finished using the restroom and went outside. Perez testified that when F.A. was later outside, Perez offered F.A. five dollars to go with him into the woods. Perez explained that once they were in the woods, Perez fondled F.A., put his mouth on F.A.'s penis, and Perez had F.A. do the same thing to Perez. Perez stated at trial that on the evening of the offense he had consumed "a little bit more than 12 beers[]" and that he told the police on the night of the offense that he blamed his actions in committing the offense on alcohol. Perez pleaded guilty to indecency with a child and received a ten-year sentence for the offense.

Perez testified that on the day he offended against S.M., Perez had already consumed "more than 12 beers." Perez was driving and saw S.M. walking his bike down a hill and Perez offered S.M. a ride home. Perez said S.M. was fifteen years old at the time of the offense, but Perez testified that he believed S.M. to be "[a]bout 17[.]" Although Perez denied at trial that he made sexual advances toward S.M., Perez explained that at some point S.M. jumped out of the truck and left. Perez testified that he pleaded guilty to attempted indecency with a child for the offense against S.M. At the time of the commitment trial, Perez was serving an eight-year sentence for the sexual offense against S.M.

Perez testified he was released on parole twice, but both times he violated the conditions of his parole. He also admitted to certain nonsexual convictions and

3

testified that he had been arrested "about 100 times[]" for public intoxication. Perez acknowledged that while in prison he has received multiple major disciplinaries, has received two minor disciplinaries, and has been involved with a gang.

Perez initially testified at trial that he blames only alcohol for his offenses, but he later acknowledged that the offenses were his fault "for making [his] own decisions." According to Perez, he completed some alcohol treatment programs that "helped [] a little bit," but he failed to complete one of the court-ordered alcohol treatments and he continued to drink when he got out of prison. Perez admitted at trial that despite his plans to stop drinking because drinking alcohol would be a violation of his parole conditions, he continued to drink alcohol while on parole. He testified that alcohol affects his mental state by "mak[ing him] think differently sometimes[,]" but that he does not believe it will be difficult for him to refrain from reoffending against children when he drinks alcohol outside of prison. Perez explained at trial that he does not plan on drinking alcohol when he is released from prison because "it's always getting [him] in trouble[]" and he needs to stop drinking "because it gets [him] in trouble every time [he] drink[s]." When asked at trial if it is going to be easy for Perez to refrain from drinking alcohol, Perez testified that he would have to "try [his] best not to drink no more[]" and in

4

order to avoid his desire to drink when he is released he will "[j]ust try to stay away from it and stay away from people that drink and stuff." According to Perez, he does not want to drink alcohol when he is released because it could be deadly due to his having diabetes. He testified his plan upon release is to not drink or be around children and to stay "at [his] brother's trailer house where [he] was staying at[]" or maybe he needed to "change the environment and move somewhere else instead." Perez explained that he is ashamed of his sexual offenses and does not believe he is likely to sexually reoffend.

Dr. Michael Arambula, a board certified forensic psychiatrist, testified for the State. Arambula testified that, based on his education, training, experience, and the methodology that he followed in this case, he formed an opinion that Perez suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Arambula explained his methodology for assessing a behavioral abnormality, which he testified is the methodology followed by experts with forensic training who do the same type of evaluations. He stated that in reaching his opinion he reviewed a behavioral evaluation by a psychologist, legal records regarding Perez's convictions, records relating to Perez's nonsexual offenses, records relating to Perez's participation in sex offender treatment, Perez's medical records, Perez's deposition, and statements from Perez, family members,

5

witnesses, and victims. Arambula testified that he conducted an interview of Perez and that the interview was conducted in accordance with Arambula's training as a forensic psychiatrist.

Dr. Arambula diagnosed Perez with paraphilia, some personality pathology, mild depression, and alcohol dependence. Arambula stated that Perez's sexual deviance is that he is interested in young boys and that the records indicate that Perez identified an age group of seven to fifteen as the age of boys he finds attractive. Arambula explained that "paraphilias and/or sexually deviant conditions, they're almost always chronic[,]" and "[f]or the most part[]" do not lessen over time but the severity "can be diminished with proper treatment." He stated that the "sexual deviance that exists in [Perez's] brain interferes with his ability to control himself despite being punished and being in prison[.]" Arambula testified that there are signs that Perez's sexual deviance still exists and that "when somebody exhibits still denial, minimization, making excuses for what happened, then that's a here-and-now symptom of his chronic condition called sexual deviance." In Arambula's opinion, Perez "exhibits rather extensive denial regarding [S.M.,]" and Perez has not "come to terms with what his illness can do." As for the personality pathology diagnosis, Arambula testified that Perez avoids being around adults his age, was in a gang, and "can't keep up with the conditions

6

of supervision and probation and, despite being sent to jail and prison repeatedly, he doesn't get it."

Arambula stated that Perez's nonsexual criminal offenses factored into his personality pathology as well as his risk for recidivism, and that Perez's criminal history aggravates his behavioral abnormality. According to Arambula, the records he reviewed indicate that Perez had been arrested multiple times for driving while intoxicated and other nonsexual criminal offenses including theft, public intoxication, burglary of a vehicle, and retaliation. Arambula testified that the number of arrests for public intoxication is "off the scale."

Arambula explained that the details of Perez's sexual convictions are significant because the details assisted Arambula in identifying Perez's risk factors. Arambula explained that the records he reviewed reveal that Perez had fondled F.A. when F.A. was in the shower, that Perez offered F.A. money to go with him to the woods where there was mutual fondling and oral sex, and that F.A. and an eyewitness reported that Perez had attempted anal intercourse with F.A. in the woods. According to Arambula, the details from the records he reviewed suggest that the offense "was more planned than what [Perez] told [Arambula.]" Arambula testified that the multiple differences in Perez's different versions of the offense

against F.A. indicates that "there are obvious denials associated with what happened[.]"

Arambula testified that the records he reviewed indicate that fifteen-year-old S.M.'s bicycle was not working and Perez picked S.M. up and drove to a bridge. Perez then began having sexual thoughts about S.M. According to Arambula's understanding of the records, Perez touched S.M. and then asked S.M. about oral sex. S.M. hit Perez and left. Arambula testified that the records indicate that Perez "was afraid because of the reaction that had occurred because of what he did to [S.M.]" and that later Perez "wanted to apologize to the family for what he did." Arambula noted that when Perez met with Arambula, Perez "denied that anything ever happened" with S.M., and that this discrepancy between what Perez reported and what the records indicate actually occurred demonstrates that "this is basically an unfinished case that he needed to work up. . . in treatment[.]"

Arambula explained that the records reveal that Perez admitted in an April 2011 evaluation that he had had many thoughts about children for a long time and masturbated to such thoughts as much as twice a day which, according to Arambula, shows "how important and how prevalent the fantasies are regarding [children] and how they're fused with [Perez's] sexual gratification." Arambula noted that the amount of fantasies that "have consistently plagued [Perez's]

8

brain[]" would be "part of the severe sexual deviance that [Perez] has[.]"Arambula explained that Perez was fantasizing about children "as late as 2013 per [Perez's] self-report."

Arambula stated that Perez has not successfully completed sex offender treatment and that he has had "numerous chances to come out better than where he is now, and he's failed." Arambula noted that, at the time of trial, Perez was not taking any medication for his depression, which could be an "aggravating factor[.]" According to Arambula, "a person has to make a decision that they want to be able to control their alcoholism," and the fact that Perez has not received any significant treatment for his alcohol dependency and has not completed any formal substance abuse treatment indicates that Perez is not close to making the decision to control his alcoholism. Arambula testified that Perez had initially made progress in his sex offender treatment in prison, but stopped participating, created a "major disturbance[,]" was "removed from treatment[,]" and did not complete sex offender treatment.

Arambula testified that Perez has the following risk factors for sexually reoffending: he has sexual deviance; he has had fantasies of young boys for many years; his sexual preference is boys; he has failed treatment twice; he has "bad alcohol disease[]" that aggravates his sexual deviance; he has a history of

9

substance abuse and could relapse; he has some antisocial characteristics; his depression, if active, could be an aggravating factor; his victims are strangers; his victims are young and vulnerable; he has difficulty getting along with adults so he interacts with children; and, he is considering returning home upon release despite the fact that he learned in treatment that he should go elsewhere. Arambula explained that he reviewed the Static-99 actuarial administered to Perez by psychologist Dr. Turner and Perez's score indicated that Perez had a "moderate to moderate-high" level of risk for sexual re-offense. Arambula testified that, in his opinion, this level of risk did not accurately reflect Perez's true risk level considering the amount of fantasies Perez has struggled with and because "he's had opportunities to improve himself in treatment and other aspects of his life and . . . he just doesn't get it."

The trial court granted the State's motion for a directed verdict on the issue of whether Perez is a repeat sexually violent offender. The jury found that Perez is a sexually violent predator, and the trial court rendered a final judgment and an order of civil commitment.

## JURY ARGUMENT

In his first issue, Perez argues that the trial court erred in allowing the State to make an improper jury argument that exceeded the scope of defense counsel's

closing argument. To obtain a reversal based on an error that arises during jury argument, the appellant must show (1) an error occurred, (2) that was not invited or provoked, (3) that was preserved by proper trial predicate, such as an objection, a motion to instruct, or a motion for mistrial, and (4) was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge. *In re Commitment of Eeds*, 254 S.W.3d 555, 560 (Tex. App.—Beaumont 2008, no pet.) (quoting *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839 (Tex. 1979)).

"Generally, proper jury argument falls into one of these areas: (1) a summation of the evidence, (2) a reasonable deduction from the evidence, (3) an answer to an argument made by opposing counsel, or (4) a plea for the enforcement of a law." *In re Commitment of Dodson*, 434 S.W.3d 742, 751 (Tex. App.—Beaumont 2014, pet. denied); *see generally* Tex. R. Civ. P. 269(b), (e). Arguments that are presented to juries in summation should be confined "strictly to the evidence and to the arguments of opposing counsel." Tex. R. Civ. P. 269(e).

Perez complains of the following portion of the State's closing argument:

[State's counsel]: . . . Think about what Dr. Arambula talked about when we asked him follow-up questions to those individuals that he found did not have a behavioral abnormality. He wasn't the first person to evaluate those individuals. Another psychiatrist or psychologist --

[Defense counsel]: Objection, Your Honor. Again, this is beyond the scope of my close.

11

THE COURT: Counsel, I will overrule that objection.

[Defense counsel]: Thank you, Your Honor.

[State's counsel]: -- another psychologist before Dr. Arambula who reviewed those records said that . . . -- those nine individuals did have behavioral abnormalities. And of the 110 that Dr. Arambula has reviewed, before that someone had already determined that those individuals had behavioral abnormalities. Then Dr. Arambula evaluated those files, and nine times he disagreed with professionals in his field making these evaluations, disagreed with those individuals and said, no, that those individuals do not have a behavioral abnormality.[] Now, these are not random people that are being pulled from the prison system to do these evaluations on, and that is the difference. These are not random people being pulled off the street and he's going to find 90 percent of the time that they have a behavioral abnormality. No, these are people that have been picked, that another person has already said that they have a behavioral abnormality --

[Defense counsel]: Your Honor, this is beyond the scope of my close and not in evidence.

THE COURT: Counsel, both of you may be arguing outside the evidence. I've already instructed the jury about that, and it may be invited in your close. Thank you.

The trial court overruled Perez's objection. On appeal, Perez argues that he was deprived of a fair and impartial trial by the jury argument that "other individuals, who did not testify at trial, previously diagnosed Mr. Perez with a behavioral abnormality, rubber stamped Dr. Arambula's testimony[,]" and that the jury argument made it unnecessary for the jury to weigh Arambula's credibility

12

"because the State argued his testimony was correct because other individuals agreed with him."

Dr. Arambula testified on direct examination that, prior to meeting with Perez, Arambula reviewed records, including "a behavioral evaluation by a psychologist, a previous one, mental health evaluation[,]" that he relied on in forming his opinion in the case. On cross-examination, Arambula agreed that in the approximately 110 behavior abnormality evaluations he had performed, he found no behavioral abnormality in nine of those cases. When asked if "just loosely based on these numbers[]" he finds behavioral abnormalities "over 90 percent of the time[,]" Arambula responded, "[b]ecause of the information pertinent to each case, yes. That's a fair assessment." Arambula denied that he would say that he is likely to find a behavioral abnormality because "the individual stands alone[.]"

We note that prior to the State's closing argument, defense counsel argued the following during the defense's closing argument:

> . . . [Arambula] also said that he's had 110 of these examinations like the one he performed on Mr. Perez, and of those 110 he's only found nine who did not have behavioral abnormalities. I'm no mathematician, I was an English major and now I'm a lawyer. But I think that's above a 90-percent rate. And when my co-counsel asked him if that 90-percent rate means that he's likely to find that someone has a behavioral abnormality, he said no.

13

We also note that Perez's brief on appeal omitted the portion of the State's closing argument that immediately preceded the complained-of argument wherein the State argued as follows:

> . . . Now that brings me to the accusations that opposing counsel has made against Dr. Arambula, saying that 90 percent of the time he does find that an individual does have a behavioral abnormality with the numbers that Dr. Arambula gave. But I want you to not focus on another percentage that's trying to confuse you here. . . .

Then, the State continued with the argument about which Perez complains on appeal, wherein the State explained how the "90 percent" figure suggested by the defense was misleading and the State clarified that Arambula had testified that he was not the first person to evaluate the individuals.

The complained-of jury argument was made by State's counsel in response to the arguments advanced by Perez's counsel. *See* Tex. R. Civ. P. 269(e); *see Dodson*, 434 S.W.3d at 751 (citing *In re Commitment of Garcia*, No. 09-12-00194-CV, 2013 Tex. App. LEXIS 14986, at *11 (Tex. App.—Beaumont Dec. 12, 2013, pet. denied) (mem. op.)). Furthermore, the jury heard Arambula testify as to his opinion and that he reviewed another psychologist's behavioral evaluation of Perez. Perez did not object to such testimony. The complained-of argument made by the State was a summation of the evidence before the jury, and therefore, it was not improper. *See In re Commitment of Lovings*, No. 09-13-00024-CV, 2013 Tex.

14

App. LEXIS 12927, at **3-5 (Tex. App.—Beaumont Oct. 17, 2013, no pet.) (mem. op.). We conclude that the trial court did not abuse its discretion by viewing the State's closing arguments either as proper summation of matters in evidence or as arguments responsive to the arguments advanced by Perez's counsel. Issue one is overruled.

JURY CHARGE

In his second issue, Perez argues that the trial court erred by overruling Perez's objection to the jury charge and failing to instruct the jury that a "no" finding does not require a unanimous verdict. A trial court's decision to refuse a particular instruction in its charge is reviewed for an abuse of discretion. *Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012). A trial court may refuse to give a requested instruction or definition that is not necessary to enable the jury to render a verdict, even if the instruction or definition is a correct statement of the law. *In re Commitment of Taylor*, No. 09-10-00231-CV, 2010 Tex. App. LEXIS 9505, at *6 (Tex. App.—Beaumont Dec. 2, 2010, no pet.) (mem. op.).

Section 841.062(b) states that "[a] jury determination that the person is a sexually violent predator must be by unanimous verdict." Tex. Health & Safety Code Ann. § 841.062(b) (West 2010). The jury charge asked the question, "Do you

find beyond a reasonable doubt that RUDY PEREZ is a sexually violent predator?"

The jury charge included the following instruction:

> 6. Answer "yes" or "no" to the question. A "yes" answer must be based on a belief beyond a reasonable doubt. If you do not find beyond a reasonable doubt that the evidence supports a "yes" answer, then answer "no." Your verdict must be unanimous. That means that all 12 of the jurors must agree upon the answer made and the verdict.

At trial, Perez objected to the proposed jury charge, arguing as follows:

> Objection to No. 6 on Page 2 of 5. . . .
>
> . . . .
>
> . . . I would prefer an instruction that says "Answer 'yes' or 'no' to the question. A 'yes' answer must be based on a belief beyond a reasonable doubt. If you do not find beyond a reasonable doubt that the evidence supports a 'yes' answer, then answer 'no.' A 'yes' answer must be unanimous. That means that all 12 of the jurors must agree to a 'yes' answer. A 'no' answer may be made if 10 jurors agree to it."

The trial court overruled the objection. Perez also included the requested instruction in his written proposed jury charge. The jury answered "Yes" to the jury question and the Verdict Certificate under the jury's answer stated, "Our verdict is unanimous. All 12 of us have agreed to the answer. The presiding juror has signed the certificate for all 12 of us."

On appeal, Perez contends that section 841.062(b) is silent as to the requirements for a verdict that a person is not a sexually violent predator and that

16

the plain meaning of the statute is clear—only a finding that a person is a sexually violent predator has to be by a unanimous verdict. Perez maintains that because the statute is silent as to the requirements for the jury to find a person is not a sexually violent predator, Rule 292 of the Texas Rules of Civil Procedure applies and a finding of "no" does not require a unanimous verdict. According to Perez, the trial court erred in overruling his requested instruction because the requested instruction was "reasonably necessary" for the jury to properly determine whether he was a sexually violent predator. Perez argues that the trial court's omission of this instruction caused the rendition of an improper verdict because "[w]ithout the instruction, the jury was unaware that they could reach a 'no' finding without a unanimous verdict, so long as 10 of them agreed to that verdict."

The State argues on appeal that Perez failed to preserve error because he "never gave the trial court any basis for his argument[]" regarding the instruction and that "[t]his lack of specificity and authority in the trial court resulted in waiver." The State further argues that, even if Perez preserved error, any error was harmless.

Perez made the trial court aware of this complaint, timely and plainly, and obtained a ruling, and we conclude that he preserved the alleged error regarding the instruction. *See In re Commitment of Hatcher*, No. 09-15-00068-CV, 2015 Tex.

17

App. LEXIS 11470, at \*\*5-6 (Tex. App.—Beaumont Nov. 5, 2015, no pet. h.) (mem. op.) (citing *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992) and Tex. R. App. P. 33.1(a)). Assuming without deciding that the trial court erred in overruling Perez's objection to the jury charge and in failing to properly instruct the jury, such error would only require a reversal of the judgment if the error was harmful error. *See id.* at \*7 (citing Tex. R. App. P. 44.1). Rule 44 of the appellate rules provides that "[n]o judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of: (1) probably caused the rendition of an improper judgment; or (2) probably prevented the appellant from properly presenting the case to the court of appeals." Tex. R. App. P. 44.1(a); *see also In re Commitment of Almaguer*, 117 S.W.3d 500, 502 (Tex. App.—Beaumont 2003, pet. denied). We look to the entire record to determine whether the jury charge probably caused an improper judgment. *Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 225 (Tex. 2010).

At trial, the State bore the burden of proving that Perez is a sexually violent predator. *See* Tex. Health & Safety Code Ann. § 841.062. A "sexually violent predator" is a person who is a repeat offender and suffers from a behavioral abnormality. *Id.* § 841.003(a) (West Supp. 2014). The jury heard Perez's

18

admissions to the State's requests for admissions wherein Perez admitted his sexual offenses against F.A. and S.M. The trial court granted a directed verdict on the issue of whether Perez is a repeat sexually violent offender, leaving the jury to determine whether Perez has a behavioral abnormality, i.e., a congenital or acquired condition that, by affecting Perez's emotional or volitional capacity, predisposes him to commit a sexually violent offense, such that he becomes a menace to the health and safety of another, and that makes him likely to engage in a predatory act of sexual violence. *Id.* §§ 841.002(2) (West Supp. 2014), 841.003(a)(2).

The jury heard Perez's admissions and testimony. The jury heard the methodology used by Arambula in assessing a behavioral abnormality and that, in his expert opinion, Perez suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. The jury also heard Arambula's testimony regarding Perez's diagnoses, criminal history, and lack of treatment. Our review of the entire record demonstrates that the evidence in this case was not so sharply conflicting as to warrant reversal. *See Crump*, 330 S.W.3d at 226; *see also Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001). Furthermore, there is no indication from the record before us that, had the instruction requested by Perez been included or otherwise changed to more closely

track the language of section 841.062(b), the verdict would have been different. Under the facts of this case, we cannot say that the instruction probably caused the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a). We overrule issue two. We affirm the trial court's judgment.

    AFFIRMED.

                _____

                  LEANNE JOHNSON
                       Justice

Submitted on October 22, 2015
Opinion Delivered December 10, 2015

Before McKeithen, C.J., Kreger and Johnson, JJ.