**In re COMMITMENT OF Fred Beasley HATCHELL, Jr.**

No. 09–09–00352–CV.

Court of Appeals of Texas, Beaumont.

Submitted Nov. 18, 2010.

Decided June 16, 2011.

Donald Bayne, Dina F. Hardwick, State Counsels for Offenders, Huntsville, for appellant.

Melinda Fletcher, Special Prosecution Unit, Amarillo, for appellee.

Before McKEITHEN, C.J., KREGER and HORTON, JJ.

## OPINION

CHARLES KREGER, Justice.

The State of Texas filed a petition to civilly commit Fred Beasley Hatchell, Jr., as a sexually violent predator under the Sexually Violent Predator Act ("the Act"). *See* Tex. Health & Safety Code Ann. §§ 841.001–.150 (West 2010). A jury found Hatchell suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Id.* § 841.003. The trial court entered final judgment and an order of civil commitment. We affirm the judgment of the trial court.

## EXPERT REPORT

In his first issue, Hatchell argues that the trial court erred by (1) failing to require the State's experts to timely produce reports in compliance with Texas Rule of Civil Procedure 204.2, (2) failing to strike the expert testimony, and (3) failing to grant Hatchell's motion for continuance after the reports were produced.

Before trial, Hatchell filed objections to the State's expert witnesses, Dr. Lisa Clayton and Dr. Timothy Proctor, and a motion to strike their testimony on the basis that the doctors failed to provide expert reports in compliance with Rule 204.2. *See* Tex.R. Civ. P. 204.2. After a hearing on the motion, the trial court declined to rule on the motion until the pretrial conference. At the pretrial conference on the Friday before trial, the State produced expert reports from Drs. Clayton and Proctor. Hatchell conceded that Dr. Proctor's report complied with Rule 204.2 but contended that Dr. Clayton's report did not. The trial court overruled Hatchell's motion to strike Dr. Clayton's testimony. Hatchell moved for a continuance arguing that he needed more time to prepare for trial due to the late production of the expert reports. The trial court denied the motion.

Rule 204 of the Rules of Civil Procedure pertains generally to physical and mental examinations. *See* Tex.R. Civ. P. 204.1–204.5. Under Rule 204.1, a party may, no later than thirty days before the end of the applicable discovery period, move for an order compelling another party to submit to a physical or mental examination by a qualified physician or psychologist. Tex.R. Civ. P. 204.1(a)(1). To obtain a court order pursuant to Rule 204.1, the party seeking the order must show good cause and (1) that the mental or physical condition of a party is in controversy, or (2) that the responding party has designated a psychologist as a testifying expert or disclosed a psychologist's records for potential use at trial. Tex.R. Civ. P. 204.1(c). Rule 204.2 provides that a person subject to court order under Rule 204.1 has the right to "a detailed written report of the examin-

ing physician or psychologist setting out the findings, including results of all tests made, diagnoses and conclusions, together with like reports of all earlier examinations of the same condition." Tex.R. Civ. P. 204.2(a). "If a physician or psychologist fails or refuses to make a report the court may exclude the testimony if offered at the trial." *Id.*

Under the Sexually Violent Predator Act, the State is not required to move for a court order to have the respondent examined by a physician or psychologist. *See generally* Tex. Health & Safety Code Ann. §§ 841.001–.150. The Act provides that once a petition is filed, the respondent and the State are each entitled to an immediate examination of the respondent by an expert. *Id.* § 841.061(c). Under the Act, a mental examination of the respondent is automatic. *See id.* The State does not have to meet the burden of showing good cause. *Id.* Nor does the Act require that the expert prepare a written report or that any prepared report meet any specific criteria.

In enacting the SVP statute the Legislature found that the existing involuntary commitment proceedings were inadequate to address the risk of repeated predatory behavior that sexually violent predators pose to society. Tex. Health & Safety Code Ann. § 841.001. Civil commitment proceedings under the Act are designed specifically to deal with sexual offenders found to have a "behavioral abnormality"; a condition that affects the person's "emotional or volitional capacity" and predisposes them to commit a sexually violent offense. *Id.* § 841.002(2). Therefore, the filing of a petition creates a controversy centered on the respondent's psychological condition. The Act has set up its own framework for proceeding with evaluation of the respondent's mental condition and trial of the controversy. *See generally id.*

§§ 841.023, 841.061. For example, the Act sets forth specific procedures by which the Department of Criminal Justice or Department of Mental Health and Mental Retardation may initially evaluate a person to determine whether to recommend that the person be assessed for a behavioral abnormality. *Id.* §§ 841.022–.023. The Act further provides that the department making the assessment must retain an expert who "shall make a clinical assessment based on testing for psychopathy, a clinical interview, and other appropriate assessments and techniques[.]" *Id.* § 841.023(a). Additionally, the Act provides that the respondent has the "right to view and copy all petitions and reports in the court file." *Id.* § 841.061(d)(4).

Under the Act, a respondent is evaluated pursuant to specific procedures for a specific purpose. *See id.* §§ 841.001–.150. Thus, the need for Rule 204 is obviated by the more specific procedures of the statute. To the extent of any conflict between the statute and the rules of procedure, the statute controls. *Id.* § 841.146(b); *cf. Karlen v. Karlen,* 209 S.W.3d 841, 842–43 (Tex.App.-Houston [14th Dist.] 2006, no pet.) (concluding that Rule 204 is inapplicable in guardianship proceedings because the need for Rule 204 is obviated by the more specific procedures applicable to guardianship proceedings as set forth in the Texas Probate Code). Regardless, even if Rule 204 did govern here, the rule does not require the trial court to strike expert testimony for failure to comply with Rule 204.2; it merely gives the trial court the discretion to do so. *See* Tex.R. Civ. P. 204.2(a). We conclude the trial court did not err in failing to strike Dr. Clayton's expert testimony.

■ We now address Hatchell's argument that the trial court erred by denying his motion for continuance. An appellate court will not reverse a judgment based on

a denial of a motion for continuance absent a clear abuse of discretion. *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 800 (Tex.2002); *Snider v. Stanley,* 44 S.W.3d 713, 718 (Tex.App.-Beaumont 2001, pet. denied). An abuse of discretion occurs when the trial court "reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Marchand,* 83 S.W.3d at 800 (quoting *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985)). A judge may grant a motion to continue a trial under the Act on the request of either party and a showing of good cause. Tex. Health & Safety Code Ann. § 841.063.

Hatchell argued that due to the delayed receipt of the experts' reports, he was not ready to proceed to trial. Hatchell received the doctors' reports the Friday before the Monday-morning trial began. Dr. Proctor's report consisted of two pages, and Dr. Clayton's report consisted of one page. Neither report is part of the record before us. The State produced the evaluation notes of both doctors over a month before trial. Additionally, Hatchell deposed both doctors prior to trial. Hatchell failed to show any prejudice to him by the denial of his motion for continuance. Under these circumstances, the trial court did not abuse its discretion in denying the motion for continuance. We overrule issue one.

### SUFFICIENCY OF THE EVIDENCE

■ In his second issue, Hatchell contends that the trial court erred by failing to grant his motion for directed verdict and motion for new trial because the State failed to show that Hatchell has serious difficulty in controlling his behavior.

■ We review the trial court's denial of Hatchell's motion for directed verdict under a legal sufficiency standard. *See City of Keller v. Wilson,* 168 S.W.3d 802, 823, 827 (Tex.2005); *see also Haynes & Boone, L.L.P. v. Chason,* 81 S.W.3d 307, 309 (Tex.App.-Tyler 2001, pet. denied) (finding that an appeal from the denial of a motion for directed verdict is a challenge to the legal sufficiency of the evidence). "Because the State has the burden of proof that is employed in criminal cases, we use the appellate standard of review applied in criminal cases for legal sufficiency of the evidence." *In re Commitment of Barbee,* 192 S.W.3d 835, 839 (Tex.App.-Beaumont 2006, no pet.); *see Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).[1] We view the evidence in the light most favorable to the verdict to determine if a rational jury could have found beyond a reasonable doubt that Hatchell has serious difficulty controlling his behavior. *See Barbee,* 192 S.W.3d at 839; *see also In re Commitment of Grinstead,* No. 09–07–00412–CV, 2008 WL 5501164, at *1 (Tex.App.-Beaumont Jan. 15, 2009, no pet.) (mem. op.) (citing *In re Commitment of Gollihar,* 224 S.W.3d 843, 846 (Tex.App.-Beaumont 2007, no pet.)). We review the trial court's denial of his motion for new trial for an abuse of discretion. *In re Commitment of Marks,* 230 S.W.3d 241, 246 (Tex.App.-Beaumont 2007, no pet.).

The United States Supreme Court has stated that before a person can be civilly committed as a sexually violent predator there must be "proof of serious difficulty in controlling behavior." *Kansas v. Crane,* 534 U.S. 407, 413, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002). The Court explained:

---

1. "[T]he *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State,* 323 S.W.3d 893, 895 (Tex.Crim.App.2010).

[W]e did not give the phrase "lack of control" a particularly narrow or technical meaning. And we recognize that in cases where lack of control is at issue, "inability to control behavior" will not be demonstrable with mathematical precision. It is enough to say that there must be proof of serious difficulty in controlling behavior. And this, when viewed in light of such features of the case as the nature of the psychiatric diagnosis, and the severity of the mental abnormality itself, must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case.

. . . .

[O]ur cases suggest that civil commitment of dangerous sexual offenders will normally involve individuals who find it particularly difficult to control their behavior—in the general sense described above. And it is often appropriate to say of such individuals, in ordinary English, that they are "unable to control their dangerousness."

*Id.* at 413–15, 122 S.Ct. 867 (citations omitted). On appeal, Hatchell asserts that the State cannot point to any evidence of serious difficulty in controlling behavior.

Dr. Proctor, a licensed psychologist, with a secondary license as a sex offender treatment provider, testified at trial. Dr. Proctor reviewed Hatchell's records, including Hatchell's offenses and prison records, and met with Hatchell for two and half hours. Dr. Proctor performed, the MnSOST–R and the Static–99 actuarial tests. Hatchell's scores on both tests put him at a high risk to reoffend upon release. Dr. Proctor testified that in his opinion, Hatchell suffers from a behavioral abnormality that predisposes him to commit a predatory act of sexual violence.

Dr. Proctor stated that Hatchell has ten "sexual convictions" for committing sexual crimes against at least nine different children. Six of Hatchell's victims were children he befriended in the trailer park where he lived and the other three victims were relatives. Hatchell served time for the first set of offenses and was released under supervision in December 1984. Roughly a year after his release from prison for the first set of offenses, Hatchell committed the second set of offenses. In 2000, Hatchell was released from prison under mandatory supervision. Roughly a month later, he violated the conditions of his mandatory supervision.

Regarding Hatchell's "present view of children," Dr. Proctor testified that Hatchell admitted that he continues to have sexual thoughts about children and that he struggles to try and stop having such thoughts. Dr. Proctor testified that Hatchell admitted to sexually fantasizing about children twice a week. Hatchell compared his sexual thoughts of children to a drug addiction. Hatchell told Dr. Proctor that he quit masturbating to thoughts of children two months before the interview with Dr. Proctor but still struggled with the thoughts. Hatchell acknowledged that, up until two years before the interview, he was cutting pictures of clothed children out of magazines and masturbating to those pictures. During the interview, Hatchell asked Dr. Proctor if there was "some medical technology that he could [use to] have these thoughts of children shocked out of his brain." Dr. Proctor testified that Hatchell has had very limited sexual relationships with adult women and has had no sex offender treatment while in prison. Hatchell admitted he has a problem fantasizing about children and stated that upon

his release he would work two jobs to try and keep his mind off of children.

Dr. Clayton, a psychiatrist, also testified at trial. Dr. Clayton reviewed Hatchell's records and conducted a three-hour interview. Like Dr. Proctor, Dr. Clayton determined that Hatchell suffers from a behavioral abnormality that predisposes him to commit a predatory act of sexual violence. Dr. Clayton testified that the number of Hatchell's convictions was significant because it "shows a pattern of offending against many different children and in different situations." Dr. Clayton stated that in her opinion, Hatchell had never had a meaningful relationship with an adult woman outside of his family. Dr. Clayton told the jury that Hatchell cut pictures of children out of magazines, kept a scrapbook of the pictures, and masturbated to these images. Dr. Clayton told the jury that she has "never seen so many different images acquired while someone was incarcerated[.]"

Dr. Clayton found it significant that Hatchell's second set of sexual offenses occurred while he was on parole after serving time for the first set of offenses. Dr. Clayton explained, "so he kind of knew that you do these things, you go to prison, [yet] he didn't stay away from children." Dr. Clayton stated that after being released on mandatory supervision in 2000, Hatchell was caught jumping a fence and was believed to be heading towards an area where children were located. Dr. Clayton characterized this behavior as impulsive. According to Dr. Clayton, Hatchell had his scrapbook with him at the time of the incident. Hatchell admitted that he had the scrapbook for over six years until it was confiscated in 2000. Dr. Clayton also testified that she perceived Hatchell to enjoy talking about the offense committed against his last victim. Dr. Clayton stated that Hatchell was still sexually attracted to children at the time of her interview in March of 2009. Dr. Clayton found it significant that Hatchell violated the conditions of his supervision both times he was released from prison. Dr. Clayton stated that this "shows that [Hatchell] can't ... control his sexual urges and his sexual acting out even when he's on some type of community supervision."

"A finding that a person suffers from an emotional or volitional defect so grave as to predispose him to threaten the health and safety of others with acts of sexual violence entails a determination that he has 'serious difficulty in controlling behavior.'" *In re Commitment of Almaguer*, 117 S.W.3d 500, 505 (Tex.App.-Beaumont 2003, pet. denied) (quoting *In re Commitment of Browning*, 113 S.W.3d 851, 863 (Tex.App.-Austin 2003, pet. denied)). The jury may draw reasonable inferences from basic facts to ultimate facts. *In re Commitment of Morales*, 98 S.W.3d 288, 291 (Tex.App.-Beaumont 2003, pet. denied). The evidence in the record indicates that Hatchell is aroused by images of children and that he sought sexual gratification from such arousal while incarcerated. Hatchell started a scrapbook with such pictures in 1994 and kept it until it was confiscated in 2000. Drs. Proctor and Clayton both testified that at the time of their interviews, Hatchell still struggled with sexual fantasies about children.

Additionally, the evidence established that Hatchell committed his second set of sexual offenses while under supervision following his release from prison for the first set of offenses. Hatchell also violated his mandatory supervision after being released in 2000 and was believed to be heading towards an area where there were children. Dr. Clayton testified that this conduct shows Hatchell cannot control his sexual urges or his sexual acting out. On the evidence in this record, we conclude a

rational juror could find beyond a reasonable doubt that Hatchell has serious difficulty controlling his behavior because of a behavioral abnormality. *See generally Morales,* 98 S.W.3d at 291; *see also In re Commitment of Mullens,* 92 S.W.3d 881, 886–87 (Tex.App.-Beaumont 2002, pet. denied).

We find the evidence legally sufficient to support the jury's finding. The trial court did not err in denying Hatchell's motion for directed verdict. Nor did the trial court abuse its discretion by denying Hatchell's motion for new trial. We overrule issue two. Having overruled Hatchell's two issues, we affirm the trial court's judgment.

AFFIRMED.