In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-15-00499-CV**

**IN RE COMMITMENT OF CURTIS ALLEN ARNOLD**

_____

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 15-05-05169-CV**
_____

**MEMORANDUM OPINION**

The State of Texas filed a petition to commit Curtis Allen Arnold (Arnold) as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2015) (SVP statute). On October 14, 2015, a jury found that Arnold is a sexually violent predator, and the trial court rendered a final judgment and an order of civil commitment. Arnold filed a motion for new trial. The court denied the motion for new trial. Arnold filed a notice of appeal. In two issues, Arnold challenges the constitutionality of the SVP statute, as amended, and

1

the denial of his motion for directed verdict. We affirm the trial court's judgment and order of civil commitment.

Evidence at Trial

Responses to Requests for Admissions

The State read into the record Arnold's responses to Requests for Admissions. Arnold admitted that he was born in July of 1969, that on or about April 8, 1999, he was convicted in Liberty County of aggravated sexual assault of a child, who was younger than fourteen, and that he was convicted of indecency with a child, in a separate cause number in Liberty County. Arnold admitted that he received an eighteen-year sentence for each Liberty County offense, and he is currently incarcerated for the Liberty County offenses. Arnold also admitted that in May of 1999, he was convicted of indecency with a child in Walker County, Texas, in February of 1999, he was convicted of indecency with a child in Montgomery County, Texas, and in February of 1999, he was also convicted of aggravated sexual assault of a child in Montgomery County.

Arnold admitted that he engaged in sexual contact with E.N., a five-year-old child, and that he engaged in sexual contact with W.T., a thirteen-year-old child. He admitted that he knew it was wrong to sexually offend against the children, but

he did it anyway. Arnold also admitted that he is a sex offender, and that he believes he has zero risk of reoffending.

The trial court took judicial notice that the offense of indecency with a child by sexual contact falls under section 21.11(A)(2) of the Texas Penal Code and that aggravated sexual assault falls under section 22.021 of the Texas Penal Code, and both are sexually violent offenses as defined by the SVP statute.[1]

Testimony of Arnold

The State called Arnold as its first witness at trial. Arnold agreed that he has five convictions for sex offenses, and that his discharge date for his offenses will be in February of 2017. One of Arnold's victims, W.T., was the child of one of Arnold's friends. Arnold testified about the two occasions when Arnold took W.T. camping. At the time Arnold offended against W.T., Arnold was twenty-seven years old and, according to the records, W.T. was twelve years old, although Arnold testified that he thought W.T. was "like 14[.]" The camping was part of an event for a group called Society for Creative Anachronism, where the participants reenact events from the Middle Ages and dress in costumes like "kings and [] queens and knights and lords and ladies." Arnold testified that he and W.T. stayed

---

[1] At the close of the State's evidence, the trial court entered a directed verdict finding Arnold to be a repeat sexually violent offender. Arnold did not object and does not challenge this finding on appeal.

in the same tent. According to Arnold, Arnold was a "massage therapist[,]" and "massaged" W.T.'s legs because W.T. complained of pain in his legs. Arnold denied pulling W.T.'s shorts down, denied telling W.T. to relax, denied trying to remove W.T.'s shorts, and denied intentionally touching W.T.'s sex organ. Arnold admitted, however, that he pleaded guilty to indecency with a child by contact and to intentionally and knowingly touching W.T.'s sex organ with sexual desire. Arnold also admitted that he offended against W.T. on another camping trip that occurred in Montgomery County, Texas.

Arnold also admitted that on the Montgomery County camping trip, Arnold sexually offended against another child, E.N., and that he was convicted of the offense against E.N. Arnold was convicted for two aggravated assaults against E.N., who was only five years old at the time. Arnold was also charged for touching E.N.'s sex organ in Liberty County. Arnold denied committing the conduct for which he was convicted with respect to the aggravated sexual assault charges.

Arnold testified that he gave a statement to the Cleveland Police and signed the statement about the offense against W.T., but Arnold claimed that he touched W.T.'s sex organ not for his own sexual gratification but because he "thought it was what [W.T.] wanted." Arnold also agreed that in the statement he gave to

police about the offense against E.N., Arnold stated: "I drove [E.N.] to my house. While on the way, I had my hand on [E.N.]'s [sex organ]. I know that [E.N.] is five years old[.]" Arnold also signed a written stipulation in connection with the Montgomery County aggravated sexual assault.

Arnold testified that he was currently enrolled in a sex offender treatment program. The program is a nine-month program which is part of his parole stipulation, and it is something he never inquired about before, and he has never had any other sex offender treatment. The first part of the program is classroom instruction, and the second part is group therapy. Arnold agreed he never told his therapist about anything other than two of his offenses, because he says the other offenses have now "fallen off" of his record. Arnold denied that he has been resistant to feedback from his treatment. Arnold believes it is safe for him to be around children because of the treatment he has had and due to his belief in God. When asked about his risk of reoffending, Arnold testified that he would not put himself in situations where he would be alone with a child, like going to the mall, babysitting, or getting involved with women who have children. Arnold also stated that he does not believe that he has a "deviant sexual attraction to children[,]" and that he has never had such an attraction.

5

On examination by Arnold's attorney, Arnold agreed that he deserved every day he has spent in jail or prison, that he had severely hurt his victims, destroyed their trust, caused shame, and that what he has done could lead his victims to depression and destroy their lives. Arnold admits that in one of his statements to the authorities he said touching his victims was a "joke" and that one of the victims "wanted [Arnold]" to offend the victim, but he testified that was in the late nineties. According to Arnold, at the time of the commitment trial, he did not find sexually abusing children to be sexually exciting, and he did not have sexual fantasies involving children. Arnold also explained that he has had support while in prison from his family and from Rabbi Pratt, his "spiritual mentor." Arnold believes he has changed and he is not the same person that he was when he offended against his victims. Arnold testified that while in prison he has not been charged with any other crime, and he has received no disciplinary write ups.

However, on further examination by the State, Arnold admitted he has received nine disciplinary violations for violating prison rules while incarcerated. He received a violation for creating a disturbance, which was a "major case[,]" for refusing to obey orders, and for possession of contraband (which he says was for possessing stamps). He did not recall that he has also been written up for refusing

6

to go to his cell. Arnold also testified that he does not believe he has ever been a pedophile.

Testimony of Dr. Gaines

The State's expert witness was Dr. Sheri Gaines, a medical doctor with a specialty in psychiatry. Dr. Gaines is board-certified in psychiatry and in child and adolescent psychiatry. She currently works at a residential treatment center that provides services to patients, and she also treats patients in an outpatient setting. As a forensic psychiatrist for the past twenty-five years, Dr. Gaines testifies in legal proceedings and performs evaluations for the court system. Approximately thirty percent of her practice involves forensic psychiatry, and the other seventy percent involves seeing patients, treating patients, and supervising other clinicians.

Dr. Gaines explained to the jury that she uses a "standard methodology" that is used by experts in Texas who conduct behavioral abnormality evaluations. Her opinion was based on her knowledge of literature, facts, and details that she gathered from interviewing Arnold and from reviewing all the collateral information. Dr. Gaines also relied upon her education, training, and clinical judgment. Before interviewing Arnold, Dr. Gaines reviewed Arnold's records, which included a report from a psychologist hired by the multidisciplinary team, Arnold's indictments and penitentiary packets, and some information regarding the

7

facts and details of his offenses. She also reviewed actuarial instruments from a psychologist about Arnold. According to Dr. Gaines, her meeting or interview of Arnold lasted about three hours. After meeting with Arnold, she received additional records including Arnold's deposition in this case, additional records regarding the offenses, as well as prison records and sex offender treatment records, all of which she reviewed and relied upon. Dr. Gaines explained that some of the records she reviewed were official records such as police reports and prison records, and that the older information is important to her in identifying risk factors that are published in the literature and in looking for a pattern of behavior. According to Dr. Gaines, "the psychiatric literature indicates that past behavior is a good predictor of future behavior especially when that past behavior is repetitive."

Dr. Gaines testified that her evaluation of Arnold was done in accordance with her training as a psychiatrist, and within accepted standards in the field of psychiatry. Based upon her education, training, experience and methodology, she formed an opinion based on a reasonable degree of certainty that Arnold currently suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Dr. Gaines diagnosed Arnold with pedophilic disorder and major depressive disorder. Gaines testified that pedophilia is a chronic condition, but it can lessen

with time and treatment. Dr. Gaines diagnosed Arnold with a pedophilic disorder because: his first offenses against a prepubescent child occurred around September of 1996 and then continued according to the last conviction around October of 1997, one victim was four or five years old, and another twelve or thirteen, and the convictions and sexual offenses meet the criteria as defined in the DSM.[2]

Dr. Gaines explained that she considered the factual details of Arnold's offenses. Dr. Gaines recalled that Arnold had seven charges that resulted in five convictions, and she considered all of the information. During her interview of Arnold, Arnold denied engaging in some of the sexual acts that were otherwise documented in records of his offense against E.N., but he admitted fondling the child and to having the child perform a sexual act that Arnold later denied in his deposition. Dr. Gaines found it significant that Arnold gave different versions of what happened at different times; this "is significant because it's evidence of the risk factor of not taking full responsibility" and of "the risk factor of minimizing what he has done." Dr. Gaines also considered the records from Arnold's sex offender treatment program, which indicated that Arnold is "resistant to feedback that he gets from peers[,]" and although Arnold has made some progress in treatment, he still has "a lot more to work on." In Dr. Gaines's opinion, although

---

[2] Dr. Gaines explained that the "DSM" is the Diagnostic and Statistical Manual.

Arnold "echoed" a lot of terminology, Arnold does not understand why he sexually offended, which is also significant. And, while one progress note indicated Arnold admitted he had a sexual attraction to his victims, other notes indicated he does not admit such attraction. Dr. Gaines considered this as present-day evidence that Arnold has a sexual deviancy.

Dr. Gaines identified risk factors for Arnold reoffending that include Arnold's deviant sexual behavior, offending against prepubescent boys, the range of the victims' ages from four to thirteen, the multiple types of sexual acts, the grooming of his victims, offending in public places, the lack of age-appropriate romantic relationships, and the lack of accepting responsibility and minimization. Dr. Gaines also identified some positive factors for Arnold, which include that he is in sex offender treatment, his faith, and the education he has obtained in prison. Arnold also scored very low on the PCL-R actuarial as to psychopathic traits.

Testimony of Rabbi James Pratt

James Pratt is a Messianic Jewish Rabbi, a Jewish believer in Jesus Christ, who has a congregation and also volunteers in the prison system.[3] Rabbi Pratt

---

[3] Arnold notified the State after the deadline in the scheduling order that he wanted to call Rabbi James Pratt as a witness on behalf of Arnold. In a pretrial hearing, the trial court ruled that the defense had shown "good cause" for the late designation, but the court concluded at the pretrial hearing that his testimony was not relevant. During the trial, the State conceded it had not objected based on

mentored Arnold from 2005 until 2013, while Arnold was incarcerated. The Rabbi admitted that he did not know the details of Arnold's criminal offenses, but the Rabbi testified he knew Arnold "has an offense, a sexual offense with children." The Rabbi testified about his work in the prison with Arnold and the support system that faith provides, and he explained that he would not be testifying if "I wasn't convinced that [Arnold] was a new man in Christ, that he is remorseful for his mistake and that he would never do that again. I couldn't sit here and testify on his behalf if I had any doubt in my mind that he would repeat that crime." Rabbi Pratt also agreed he is not a licensed psychiatrist, counselor, or sex offender provider. According to Rabbi Pratt, Arnold has admitted to and repented of being sexually attracted to prepubescent boys, and the Rabbi believes Arnold is sincere.

### Constitutional Challenge

In his first issue, Arnold argues that the SVP statute "as amended by Senate Bill 746 is facially unconstitutional because it requires all persons adjudicated as sexually violent predators to live in oppressive confinement with no evidence they cannot be treated in an outpatient model first, and as amended fails the 'intent-effects test' utilized by the Texas Supreme Court in *In re Commitment of Fisher*,

relevancy, and Dr. Gaines testified about the protective factor of Arnold's faith. The trial court then ruled that Rabbi Pratt would be allowed to testify but limited his testimony. The Rabbi was not allowed to testify as an expert on the specific risk of reoffending as a sexual offender.

11

164 S.W.3d 637 (Tex. 2005)." Arnold contends that the findings of a trial court judge as to another civilly committed person, Alonzo May, equally apply to Arnold, and Arnold argues that "at least five out of six of the 'intents-effects' test factors as analyzed in *Fisher* have been rendered moot by SB 746."

Effective June 17, 2015, Senate Bill 746 amended Chapter 841 of the Texas Health and Safety Code in several respects. *See* Act of May 21, 2015, 84th Leg., R.S., ch. 845, 2015 Tex. Sess. Law Serv. 2701, 2701-12. The Legislature created a new state agency, the Texas Civil Commitment Office (TCCO), with the responsibility for treatment and supervision of sexually violent predators.[4] *Id.* § 3 (current version at Tex. Health & Safety Code Ann. § 841.007 (West Supp. 2015)). The Legislature required the TCCO to develop a tiered program of supervision and treatment that provides a seamless transition from a total confinement facility to less restrictive housing and supervision and eventual release from civil commitment, based on the person's behavior and progress in treatment. *Id.* § 16 (current version at Tex. Health & Safety Code Ann. § 841.0831 (West Supp. 2015)). Under the statute as amended, the TCCO transfers a committed person to

---

[4] *See* Tex. Gov't Code Ann. § 420A.002 (West Supp. 2015). Throughout this opinion we refer to the Texas Civil Commitment Office by its acronym, "TCCO." We refer to its predecessor agency, the Office of Violent Sex Offender Management, as "OVSOM." In some places in this opinion, we refer to Chapter 841 of the Texas Health and Safety Code as "the SVP statute."

12

less restrictive housing and supervision if the transfer is in the best interests of the person and conditions can be imposed that adequately protect the community, and a committed person may petition the court for a transfer to less restrictive housing and supervision. *Id.* (current version at Tex. Health & Safety Code Ann. § 841.0834 (West Supp. 2015)). The enacting language of SB 746 provides:

> If a civil commitment requirement imposed under Chapter 841, Health and Safety Code, before the effective date of this Act differs from any of the civil commitment requirements listed in Section 841.082, Health and Safety Code, as amended by this Act, the applicable court with jurisdiction over the committed person shall, after notice and hearing, modify the requirement imposed as applicable to conform to that section.

*Id.* § 40(b).

The statutory amendments about which Arnold complains became effective on June 17, 2015, and Arnold's trial began on October 12, 2015. The appellate record indicates that Arnold did not raise the issue of the constitutionality of the amended SVP statute before or during trial, and he failed to raise the issue in his motion for new trial. Generally, to preserve a complaint for appellate review, the complaining party must present the complaint to the trial court by timely request, objection, or motion. Tex. R. App. P. 33.1(a)(1).

We apply the preservation rule to constitutional challenges. *See In re L.M.I.*, 119 S.W.3d 707, 710-11 (Tex. 2003) (parent failed to preserve his due process

13

challenge); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 222 (Tex. 2002) (party failed to raise constitutional argument that trial court's ruling violated open-courts provision in response to summary judgment motion and thus did not preserve it for appeal); *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993) (party waived due process and equal protection challenges by failing to raise them in trial court); *Lowe v. Jefferson Dental Clinics*, No. 05-11-00902-CV, 2012 Tex. App. LEXIS 3796, at **4-5 (Tex. App.—Dallas May 14, 2012, no pet.) (mem. op.) (appellant failed to preserve her challenge to the constitutionality of Chapter 74 by failing to raise the complaint in the trial court); *In re J.R.N.*, No. 09-08-00029-CV, 2010 Tex. App. LEXIS 2280, at **8-9 (Tex. App.—Beaumont Apr. 1, 2010, no pet.) (mem. op.) ("The law is well settled that even constitutional errors may be waived by failure to raise the issues at trial."). Arnold did not raise his constitutional arguments in the trial court. Therefore, he failed to preserve the issue for appellate review. *See* Tex. R. App. P. 33.1. We overrule Arnold's first issue.[5]

---

[5] Nevertheless, even if Arnold had preserved his constitutional challenge, we would still overrule his first issue. This court recently examined the constitutionality of the SVP statute, as amended, in *In re Commitment of May*, No. 09-15-00513-CV, 2016 Tex. App. LEXIS 8058 (Tex. App.—Beaumont July 28, 2016, no pet. h.). In *May*, we reversed the trial court and concluded that the statute is constitutional, and we specifically examined and applied the factors as outlined in *Fisher*. *Id*. For the same reasons discussed in *May*, we conclude the statute remains civil and we reject Arnold's constitutional challenge.

## Motion for Directed Verdict

In his second issue, Arnold argues that the trial court erred in denying his motion for directed verdict because he claims that the State's expert, Dr. Sheri Gaines, "could not provide scientific support for her methodology used in this case, and could not provide scientific support of her opinion that Appellant's actions 16 years ago constitute a behavioral abnormality today." Arnold did not raise a challenge to Dr. Gaines's testimony either before or during her testimony. However, at the close of the trial, after the State and Defense rested, Arnold moved for a directed verdict wherein he argued as follows:

> [Respondent's Attorney]: Your Honor, at this time, the Respondent moves for a directed verdict on the grounds that the State has failed to offer any proof that Mr. Arnold suffers from a behavioral abnormality. Evidence is legally insufficient to support a verdict whether the evidence at trial would enable reasonable and fair minded people to reach a verdict. The State has presented no evidence or insufficient evidence to show that Mr. Arnold suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence today. The State's expert was unable to close the analytical gap between Mr. Arnold's last offense and his sexual behavior today. There is no evidence that even if Mr. Arnold is sexually deviant that Mr. Arnold is likely to act on that tendency which is required for the State to prove.
>
> The State's expert opinion is based upon an unstructured clinical judgment as she gave no basis for support of her methodology or the research she relied upon in giving her opinion in this case. She never cited to any specific articles regarding her risk factors for an example. She scored no actuarial instruments and, even though she said she reviewed these instruments, she also testified that she has no

training and/or experience in scoring these instruments, thus, her ability to review this instrument is questionable at best.

Unstructured clinical judgment is a process involving no specific guidelines but relies on the individual clinician's evaluation having regard to the clinician's experience and qualifications. Thus, her testimony is wholly conclusory, speculative and unreliable.

The trial court overruled the motion for directed verdict.

We review the denial of a motion for directed verdict under a legal sufficiency standard. *In re Commitment of Hatchell*, 343 S.W.3d 560, 564 (Tex. App.—Beaumont 2011, no pet.). We view the evidence in the light most favorable to the verdict to determine if a rational jury could have found, beyond a reasonable doubt, the elements required for commitment under the SVP statute. *In re Commitment of Nicholson*, No. 09-13-00498-CV, 2014 Tex. App. LEXIS 10179, at **9-10 (Tex. App.—Beaumont Sept. 11, 2014, no pet.) (mem. op.). "It is the factfinder's responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts." *Id.*

The State argues that Arnold failed to make timely objections to Dr. Gaines's testimony and that he waived the complaints in his motion for directed verdict. When a party intends to challenge the reliability of an expert's methodology, a timely objection must be made in the trial court. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 409 (Tex. 1998); *In re Commitment of*

16

*Barbee*, 192 S.W.3d 835, 843 (Tex. App.—Beaumont 2006, no pet.); *see also* Tex. R. App. P. 33.1; Tex. R. Evid. 103. An objection to reliability is timely if it is made before trial, or when the evidence is offered. *Maritime Overseas*, 971 S.W.2d at 409. An objection raised after the evidence is offered is not timely. *See In re Commitment of Dodson*, 434 S.W.3d 742, 749-50 (Tex. App.—Beaumont 2014, pet. denied) (finding an objection raised the day following the testimony was untimely). Additionally, an objection raised after the deadline set in a docket control order is also untimely. *In re Commitment of Conley*, No. 09-10-00383-CV, 2011 Tex. App. LEXIS 7877, at **12-13 (Tex. App.—Beaumont Sept. 29, 2011, no pet.) (mem. op.).

The docket control order in this case set the deadline for challenges to expert testimony as September 16, 2015. Arnold did not object to the testimony of Dr. Gaines, or to the reliability or methodology used by Dr. Gaines, until after the deadline in the docket control order and after both parties had rested and closed at trial. Appellant does not address this deficiency in his appellate brief. However, Appellant contends that while "[c]hallenges that raise questions regarding the scientific reliability of [the] expert's methodology used to examine a set of facts must be raised before trial or when the evidence [is] offered[,][] challenges to an expert's conclusory, speculative, or *ipse dix[i]t* opinion may be raised for the first

17

time on appeal (or in Appellant's case, the motion for directed verdict and the motion for new trial)."

On appeal, Arnold challenges Gaines's testimony as conclusory, non-probative, speculative, and legally insufficient. He contends that there is an analytical gap between the facts and the expert's conclusions, the expert's opinions are lacking in methodology and authoritative support, and, therefore, unreliable. Arnold also argues that Gaines misapplied the actuarial tests. Nevertheless, in his Reply Brief, Arnold states that he "does not challenge the scientific reliability of Dr. Gaines' methodology . . ." but rather that Dr. Gaines's "failure to provide specific articles or research to support her opinion is what Appellant challenges on appeal[.]"

Arnold's complaints regarding Gaines's use of or misapplication of actuarial tests and her alleged failure to provide authoritative support for her opinions concern the foundational data used or relied on by the expert in reaching her opinions. *See In re Commitment of Sprague*, No. 09-10-00228-CV, 2011 Tex. App. LEXIS 4503, at \*\*28-29 (Tex. App.—Beaumont June 16, 2011, no pet.) (mem. op.). Similarly, a complaint that an analytical gap exists in an expert's testimony or a complaint that the expert's testimony is not based on the facts of the case is a challenge to the methodology used by the expert. *In re Commitment of Robertson*,

No. 09-09-00307-CV, 2010 Tex. App. LEXIS 7421, at **28-29, 31 (Tex. App.—Beaumont Sept. 9, 2010, pet. denied) (mem. op.). Arnold's objections to Gaines's testimony were untimely. *See* Tex. R. App. P. 33.1(a)(1). Under these circumstances, Arnold's challenges to the expert's testimony as outlined in the motion for directed verdict were not timely preserved for appellate review. *See Dodson*, 434 S.W.3d at 749-50; *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816-17 (Tex. 2009); *see also Sprague*, 2011 Tex. App. LEXIS 4503, at *29; *Robertson*, 2010 Tex. App. LEXIS 7421, at *29; *Barbee*, 192 S.W.3d at 843.

To the extent Arnold challenges Gaines's opinions as legally insufficient, we also disagree. Gaines's opinions were based upon established methodology and techniques in her profession. *See Dodson*, 434 S.W.3d at 750 (quoting *In re Commitment of Day*, 342 S.W.3d 193, 206 (Tex. App.—Beaumont 2011, pet. denied)). Dr. Gaines is a board-certified psychiatrist. The methodology she employed in this case is the same methodology that she learned during her formal education and training, and it is the methodology used by other professionals conducting behavioral abnormality evaluations. Like the expert in *Dodson*, Dr. Gaines conducted a face-to-face interview with Arnold. She also reviewed and relied upon records typically used by other professionals conducting this type of evaluation. Dr. Gaines diagnosed Arnold with pedophilic disorder and major

19

depressive disorder. She identified risk factors Arnold possesses, as well as positive factors. She testified about the risk factors and explained what they are based upon. She also explained to the jury that her opinion is based on her education, training, clinical judgment, knowledge of the literature, the details obtained from Arnold and his records, and her review of all of the collateral information. In Dr. Gaines's expert opinion, Arnold suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Dr. Gaines explained in detail the facts and evidence she found relevant in forming her opinions and the role those facts played in her evaluation. Her testimony was not so speculative or conclusory as to be completely lacking in probative value. *See In re Commitment of Moss*, No. 09-12-00599-CV, 2014 Tex. App. LEXIS 1612, at \*\*6-7 (Tex. App.—Beaumont Feb. 13, 2014, pet. denied) (mem. op.). *Conley*, 2011 Tex. App. LEXIS 7877, at \*13; *Sprague*, 2011 Tex. App. LEXIS 4503, at \*\*29-30; *see also Barbee*, 192 S.W.3d at 843.

"The jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *In re Commitment of Mullens*, 92 S.W.3d 881, 887 (Tex. App.—Beaumont 2002, pet. denied). The jury may resolve conflicts and contradictions in the evidence by believing all, part, or none of the witnesses' testimony. *Id*. Viewing the evidence in the light most favorable to the verdict, we

conclude that a rational jury could have found, beyond a reasonable doubt, that Arnold is a sexually violent predator, and the evidence is legally sufficient to support the jury's finding. *See* Tex. Health & Safety Code Ann. § 841.062(a); *see also Kansas v. Crane*, 534 U.S. 407, 413 (2002); *Mullens*, 92 S.W.3d at 885; *In re Commitment of Burnett*, No. 09-09-00009-CV, 2009 Tex. App. LEXIS 9930 (Tex. App.—Beaumont Dec. 31, 2009, no pet.) (mem. op.). Weighing all of the evidence, we also conclude the verdict does not reflect a risk of injustice that compels ordering a new trial. *See Day*, 342 S.W.3d at 213. We overrule both issues and we affirm the trial court's judgment and order of civil commitment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on July 14, 2016
Opinion Delivered August 25, 2016

Before McKeithen, C.J., Kreger, and Johnson, JJ.

21